LAWRENCE M. AHNERT *v.* R. E. WILDMAN, M.D., AND CHESAPEAKE & OHIO RAILWAY COMPANY, A/K/A CHESSIE SYSTEM

[No. 2-477A127. Filed June 14, 1978. Rehearing denied March 27, 1979. Transfer denied July 11, 1979.]

*Jeffry G. Price*, of Peru, for appellant.

*George Wildman, Miller, Tolbert, Hirschauer & Wildman*, of Logansport, *Russel J. Wildman*, of Peru, for appellees.

### CASE SUMMARY

BUCHANAN, C.J.—Plaintiff-Appellant Lawrence M. Ahnert (Ahnert) appeals the granting of a summary judgment to R. E. Wildman, M.D. (Dr.

Wildman) and the Chesapeake & Ohio Railway Company (Chessie System), claiming procedural irregularities and the judgment was contrary to law.

We affirm.

## FACTS

In 1973, Ahnert, a fireman for the Chessie System, entered a West Virginia hospital to be treated for depression. After two sojourns in the hospital, Ahnert was discharged in February, 1974, by Dr. Florence Hobbock, his attending psychiatrist.

Before he could return to work, however, the Chessie System required the approval of Dr. Wildman, the company physician. That approval was consistently denied until July of 1974.

During this period (February to July, 1974) Ahnert was the beneficiary of health insurance policies which required certification by an attending physician of his inability to work. Otherwise benefits would not be paid.

Dr. Wildman repeatedly refused to complete the insurance forms, claiming that he was not the attending physician. Similarly, Ahnert's attempts to have the forms completed by his attending physicians were also unsuccessful. No certification, no insurance benefits.

Ahnert subsequently filed suit[1] against Dr. Wildman and the Chessie

---

1. Ahnert's complaint in one paragraph (omitting prayer thereof) reads as follows:

Lawrence M. Ahnert, Plaintiff in the above entitled cause, by his attorney, Jeffry G. Price, now states for claim against the above named Defendants and each of them:

1. Plaintiff was, at all times here relevant, an employee of the Defendant, Chesapeake and Ohio Railway Company a/k/a Chessie System, hereinafter referred to as Defendant Railroad.

2. That Defendant, Roscoe E. Wildman, M.D., hereinafter referred to as Defendant Doctor, was at all times here relevant an employee, servant or agent of the Defendant Railroad.

3. That Plaintiff was hospitalized from approximately January to March, 1974, during which time he was on leave from his employment with the Defendant Railroad.

4. That prior to returning to work, Defendant Railroad required Plaintiff to be examined by Defendant Doctor to determine Plaintiff's fitness for work.

System claiming the doctor negligently failed to complete the forms. On October 13, 1976, Dr. Wildman filed the following motion for summary judgment:

## MOTION FOR SUMMARY JUDGMENT

Comes now R. E. Wildman, M.D., by counsel, and respectfully moves the Court to enter summary judgment for this defendant and against the plaintiff pursuant to Indiana Rules of Procedure, on the grounds that the plaintiff admitted in his deposition that this defendant, R. E. Wildman, M.D., was not his treating or attending physician; and, therefore, it is apparent that there is no genuine issue as to the following material facts:

1. The defendant, R. E. Wildman, M.D., did not owe a duty to the plaintiff.

---

5. That many months after Plaintiff's release by the hospital in March, 1974, Defendant Doctor refused to certify him fit for work to the Defendant Railroad.

6. That Defendant Doctor, however, during this period of many months, refused to complete Plaintiff's claims for credit health insurance and to otherwise state in writing that Plaintiff was unfit to work or otherwise disabled.

7. That Defendant Doctor's refusal to complete the necessary claim forms was arbitrary and capricious with heedless disregard of Plaintiff's rights and well being and should be punished by the award of Twenty-five Thousand ($25,000.00) Dollars in punitive damages.

8. That as Defendant Railroad was notified of Defendant Doctor's refusal and Defendant Railroad refused to direct its agent, Defendant Doctor, to complete the forms, said Defendant Railroad should be charged with the actions of its servants, agents or employees and punished by the award of Twenty-five Thousand ($25,000.00) Dollars in punitive damages.

9. That Defendant Railroad's negligence approximately caused Plaintiff damage and loss in the sum of Twelve Thousand ($12,000.00) Dollars.

10. That Defendant Doctor's negligence approximately caused Plaintiff damage and loss in the sum of Twelve Thousand ($12,000.00) Dollars.

11. That Defendant Railroad breached its employment contract with the Plaintiff causing Plaintiff damage, both direct and consequential, in the sum of Twelve Thousand ($12,000.00) Dollars.

12. That Defendant Railroad is in possession of a copy of any written contract of employment between said Plaintiff and the Defendant.

13. That the negligent acts of the Defendant Railroad's servant, agent or employee, Defendant Doctor, should be imputed to the said Defendant Railroad.

14. That Defendant Railroad negligently intrusted its servant, agent or employee, Defendant Doctor, with the care and examination of the Plaintiff.

2. Since there was no duty owed, there could be no breach of that duty.

WHEREFORE, the defendant, R. E. Wildman, M.D., prays for judgment based upon the undisputed facts which show that as a matter of law the plaintiff cannot recover against this defendant and that the said defendant, R. E. Wildman, M.D., is entitled to judgment.

On October 15, the Chessie System also filed a motion for summary judgment.

A hearing on these motions was held October 21, 1974, and two weeks later summary judgment was granted in favor of Dr. Wildman and the Chessie System.

## ISSUES

Ahnert raises the following issues on appeal:

1. Did the trial court erroneously grant summary judgment as a matter of law?

2. Did the trial court commit reversible error by failing to follow the requirements of Trial Rule 56 in granting summary judgment?

## PARTIES' CONTENTIONS

Initially, Ahnert contends the decision is contrary to law because Dr. Wildman owed Ahnert a duty to fill out his insurance forms. As that duty was breached, the Doctor and the Railroad (under the doctrine of respondeat superior) are liable for damages arising out of a breach.

The defendants reply that Dr. Wildman was merely an examining physician and had no responsibility to fill out the forms. Consequently, no recovery was possible against the Chessie System.

Secondly, Ahnert raises a number of alleged procedural irregularities committed by the trial court. He claims that the hearing on the summary judgment was held within ten days of the filing and service of notice of that motion, and thus violates Trial Rule 56. Further, the trial court failed to state it had found no genuine issues of material fact, nor upon what evidence it made that finding. Further, the trial court

failed to indicate what issues it had decided. He also objects to the form of the motion because it contains unsworn allegations of fact.

Dr. Wildman replies these asserted errors are not grounds for reversal. Ahnert failed to object to holding the summary judgment hearing and has waived that issue. He further argues that there is no requirement that the court state there is no issue of material fact, and that because duty is the only issue presented, the facts clearly support the court's conclusion. Further, there is no requirement that a finding be made regarding the evidence used in reaching a conclusion.

## DECISION

### ISSUE ONE

*CONCLUSION* — The trial court did not erroneously grant summary judgment as a matter of law.

As will hereinafter appear, we conclude that there was no genuine issue as to any material facts before the trial court. Therefore, it is important to determine if the trial court wrongfully applied the law to the facts in rendering summary judgment. This necessarily leads us to a consideration of the physician-patient relationship.

Those who take the Hippocratic oath undertake to practice the healing art on a consensual basis with their patients, usually in expectation of payment for services rendered. The physician-patient relationship has been held to be a consensual one, wherein the patient knowingly seeks the assistance of a physician and the physician knowingly accepts him as a patient. *Findlay v. Board of Supervisors of Mohave County* (1951), 72 Ariz. 58, 230 P.2d 526, 24 ALR 2d 841. The relationship may result from an express or implied contract, either general or special, and the rights and the liabilities of the parties are governed by the general law of contract, *Spencer v. West* (1960), 126 So.2d 423, 97 ALR 2d 1224. The consensual nature of this relationship between the "treating" (or attending) physician and the patient is the key to the duties imposed upon the physicians. See generally 61 AM.JUR.2d, *Physicians, Surgeons, Etc.,* § 96.

However, a different, non-consensual relationship comes into being if a physician examines a job applicant or employee for the benefit of a

prospective or actual employer. The "examining" physician under these circumstances ordinarily has not consented to treat the patient, and the courts have uniformly imposed a lesser duty of care than that owed to regular patients. *See Hoover v. Williamson* (1964), 236 Md. 250, 203 A.2d 861, 10 ALR 3d 1064.

Dr. Wildman falls into the latter category . . . he merely examined Ahnert as to his fitness to resume employment at the request of and for the benefit of the Chessie System (who presumably compensated him). Should Dr. Wildman, then, be required to fill out Ahnert's insurance forms on demand? Does an examining physician have such a duty?

A closer look at the rights and duties arising out of the two categories of physicians provides the answer.

## A. THE "TREATING" PHYSICIAN

Many jurisdictions imposed on the treating physician responsibilities that go beyond health care as such. *Canterbury v. Spence* (1972), 150 U.S. App. D.C. 263, 464 F.2d 772; *Cobbs v. Grant* (1972), 8 Cal.3d 229, 104 Cal. Rptr. 505, 502 P.2d 1; *Cannell v. Medical & Surgical Clinic*, S.C. (1974), 21 Ill.App.3d 383, 315 N.E.2d 278; *Alexander v. Knight* (1962), 197 Pa.Supp. 79, 177 A.2d 142.

One of such responsibilities is to aid the patient in litigation and render reports when necessary, *Alexander, supra.* Another may be to offer medical testimony on behalf of the patient if necessary. *Hammonds v. Aetna Casualty & Surety Company* (1965), 243 F.Supp. 793.

*Murphy v. Godwin* (1973), 303 A.2d 668, is the leading case as to the duty of an attending physician to fill out insurance forms. The Murphys, after discovering Mrs. Murphy had a serious kidney infection, decided to apply for health insurance for their family. They made application on July 22, 1970, and a routine insurance form was sent to Dr. Godwin, their family physician, on July 30, 1970. The form, called an "attending physician's statement", consisted of five questions on a single page, seeking information concerning diagnosis, treatment, and present conditions regarding specific illnesses treated by the physician. Repeated calls and visits failed to persuade Dr. Godwin to complete the form, and on September 2, 1970, Mrs. Murphy delivered twins

who were born with congenital illnesses. Because the form was not returned until November, the insurance company refused to honor the application.

In finding that a treating physician had a duty to fill out insurance forms, the Delaware Court relied on negligent nonfeasance:

> Although it is well known that physicians usually accommodate patients by filling in the forms required by them for various reasons connected with insurance, the question of a doctor's legal duty toward his patients with respect to completing insurance forms is apparently novel. The existence of such a duty may be found, however, by reference to established tort theory and recognized incidents of the doctor-patient relationship.

> Liability for negligent nonfeasance may be found to exist where there is some already existing and definitie relationship between the parties "of such a character that social policy justifies the imposition of a duty to act." PROSSER, THE LAW OF TORTS (4th Ed.), § 56 at P. 339. *A relationship of that character exists when the party to be held liable has by some foregoing voluntary act brought himself into a relationship with others* from which he obtains or expects benefits. See McNeese and Thornton *Affirmative Duties in Tort*, 58 Yale L.J. 1272 (1949).

> . . .

> . . . , if a doctor-patient relationship is shown to exist, it must have given rise to a duty of reasonable care in the disposition of the form by Dr. Godwin. (Emphasis added)

> 303 A.2d at 673, 674.

And so it is that a treating physician has a duty to fill out forms, probably a meritorious requirement in view of increased public dependence upon medical insurance as a means of combating rapidly rising health-care costs. Only he can perform the function, which would appear to be a necessary incident of medical treatment.

## B. THE "EXAMINING" PHYSICIAN

No jurisdiction, unfortunately, has considered the duty of an examining physician to fill out insurance forms at the patient's request.

As might be expected, the examination by a physician of a patient for the benefit of an employer has been held to create a somewhat dif-

ferent relationship than that between a treating physician and his patient. *Hoover v. Williamson, supra; Lotspeich v. Chance Vought Aircraft* (1963), 369 S.W.2d 705. Some cases have gone so far as to conclude that absolutely no doctor-patient relationship exists between the examining physician and patient. *Hoover, supra; New York Cent. R.R. Co. v. Wiler* (1931), 124 Ohio St. 118, 177 N.E. 205.

The exact scope of the examining physician's duty seems to vary widely. In some jurisdiction the patient has no legal right to demand any care on the part of the examining physician (who must not injure him); and there is no duty to discover the presence of disease. *Lotspeich, supra.* In *Riste v. General Electric Co.* (1955), 47 Wash.2d 680, 289 P.2d 338, a physician was not liable for failing to disclose the discovery of active tuberculosis because no duty of treatment was owed nor did the physician aggravate the condition.

In *Beadling v. Sirotta* (1964), 41 N.J. 555, 197 A.2d 857, the examining physician misrepresented the prospective employee's condition. In reversing a judgment against the physician, the court concluded that although the physician owes a duty of reasonable care, that duty is lesser than that owed to a patient who actively seeks assistance from a doctor.

However, if an examining physician actively advises a patient, he may be liable. *Hoover v. Williamson, supra:*

> It may be assumed that if Dr. Williamson had done no more than direct or supervise the X-Ray examination of Hoover, his *only duty* would have been to General Electric. . . . We think, however, . . . that *Dr. Williamson undertook to advise Hoover of his condition of health,* referred him to a consultant (expert in the field) and, after this consultation, both affirmatively undertook to advise Hoover again and, contrary to his professional obligations, both wrongfully represented the seriousness of his condition . . . and concealed from him the recommendations to the contrary of the consultant, all to the injury of, and damage to, Hoover. (Emphasis added)

> 203 A.2d at 864.

There is no doubt that the decided cases limit the legal liability of a physician who examines a person for the benefit of a third party.

Understandably so because the physician's selection and remuneration come from a third party for whose benefit the examination is made. There is no consensual relationship between the doctor and the patient, except for the limited purpose of examination.

So to impose a duty of filling out insurance forms on a doctor who has only consented to examine a patient for a third party, and has not undertaken to treat or advise that patient and is not paid by him, would be inconsistent with the very nature of the limited relationship. No case has gone so far as to saddle an examining physician with such a burden. And neither do we.

Consequently, the trial court property granted summary judgment because the duty of Dr. Wildman as an examining physician under these circumstances did not extend to filling out insurance forms for Ahnert. And, if no duty extended to Dr. Wildman, there was no basis for liability on the part of the Chessie System.

*ISSUE TWO*

*CONCLUSION*—No reversible error was committed by the trial court in granting summary judgment.

In granting summary judgment a trial court must follow Indiana Trial Rule 56(C):

> *The motion [for summary judgment] shall be served at least ten [10] days before the time fixed for the hearing.* The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment may be rendered upon less than all the issues or claims, including without limitation the issue of liability or damages alone although there is a genuine issue as to damages or liability as the case may be. *A summary judgment upon less than all the issues involved in a claim or with respect to less than all the claims or parties shall be interlocutory unless the court in writing expressly determines that there is not just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties. The court shall designate the issues or claims upon*

*which it finds no genuine issue as to any material facts.* (Emphasis added)

### A.

The failure of the trial court to specifically state there was no genuine issue of material fact is not fatal. Ahnert's contention in this regard was specifically rejected in *Brutus v. Wright* (1975), 163 Ind.App. 366, 324 N.E.2d 165, wherein this court concluded that "While a trial court should make such a finding, such insubstantial defects in judgments should not be the basis for a reversal." Also see *Brandon v. State* (1976), 264 Ind. 177, 340 N.E.2d 756.

Appellate Rule 15(E)[2] aids us in making this determination, as it does with the other procedural questions which follow.

### B.

Ahnert attacks the summary judgment because it fails to state which issues have been summarily decided . . . an assertion predicated on the premise that there were multiple issues before the trial court, i.e., negligence, breach of an employment contract between Ahnert and the Chessie System, and incompetence on the part of Dr. Wildman. However, our examination of the complaint and the record negates the existence of the latter two "issues".

Ahnert's "issue" as to breach of an employment contract is without substance as there is no such contract in the record, nor is any such contract attached to the complaint as required by TR. 9.2(A) if a cause of action is to be based thereon.

Neither do we find anything to support his claim that he presented a negligent entrustment theory *based on Dr. Wildman's incompetence.*

---

2. Appellate Rule 15(E) provides in pertinent part:

DEFECT IN FORM NO GROUND FOR REVERSAL

No judgment shall be stayed or reversed, in whole or in part, by the court on appeal for any defect in form, variance or imperfections contained in the record, pleadings, process, entries, returns, or other proceedings therein, which by law might be amended in the court below, but such defects shall be deemed to be amended in the court on appeal; nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below.

The only conceivable reference to any such theory is found in paragraph #14 of the single paragraph complaint, a complaint which deals at length not with incompetence, but with Wildman's breach of a duty to fill out the insurance form. We interpret the complaint, as apparently did the trial court, to merely state several bases for recovery arising out of a single set of operative facts, i.e., failure to complete the forms. No issue as to incompetence was raised.

Thus, the trial court properly rendered summary judgment on the issue before it, the duty of Dr. Wildman to fill out the forms, and that judgment was sufficient. *See Equitable Life Assurance Society of U.S. v. Crowe* (1976), 170 Ind.App. 677, 354 N.E.2d 722, 776; also see *Sekerez v. Lake County Board of Commissioners* (1976), 171 Ind.App. 463, 358 N.E.2d 140. No designation is necessary if there is only one issue. *Crowe, supra.*

### C.

Thirdly, although hearing on the motions for summary judgment was held within ten days of the filing and service of notice, thus contravening the plain language of TR.56, the record contains no objection thereto by Ahnert. Under such circumstances the defect is waived. *See State v. Maplewood Heights Corp.* (1973), 261 Ind. 305, 302 N.E.2d 782.

### D.

Ahnert's fourth alleged procedural defect is that the trial court failed to identify the legal basis (reasons) relied upon in granting the summary judgment, placing reliance on *Singh v. Interstate Finance of Indiana No. 2, Inc.* (1969), 144 Ind.App. 444, 246 N.E.2d 776 . . . a case decided prior to the adoption of the present trial rules.

There is no specific requirement in TR.56 that the legal basis relied on by the trial court in granting summary judgment be specifically stated. It would be an aid to appellate review if such a practice is followed, but is not required. As our Supreme Court observed in *Brandon v. State, supra* at 756, "If appellate review is frustrated by the lack of such statements, remand to the trial court is proper." BARRON & HOLTZOFF, Federal Practice and Procedure, § 1242, at 139, n. 56.1 (1970 Pocket Part).

In this case, as in *Brandon*, the legal basis for summary judgment is apparent from the record. Remand is unnecessary.

Finding no basis for reversal, we affirm.

White, J. Concurs

Garrard, P.J. (by designation) Concurs.

NOTE — Reported at 376 N.E.2d 1182.