Dr. Gary **WEESNER**, Superintendent Metropolitan School District of Washington Township, Marion County, Indiana, Individually and in his official capacity; Metropolitan School District of Washington Township, Marion County, Indiana; Dr. Harold H. Negley, Superintendent of Public Instruction, Indiana State Department of Public Instruction, Individually and in his official capacity; Indiana State Board of Education, Appellants (Defendants Below),

v.

John H. **BAKER**, by his parents and natural guardians, John E. **BAKER** and Shirley Baker, and John E. Baker and Shirley Baker, Appellees (Plaintiffs Below).

No. 2–1183A394.

Court of Appeals of Indiana, Second District.

May 1, 1985.

Stephen R. Lewis, Johnson & Weaver, Indianapolis, for appellants Dr. Gary Weesner and Metropolitan School Dist. of Washington Tp., Marion County.

Linley E. Pearson, Atty. Gen., David Michael Wallman, Deputy Atty. Gen., Indianapolis, for appellants Dr. Harold H. Negley and Indiana State Bd. of Educ.

David L. Dunlap, Ancel, Dunlap & Traylor, Indianapolis, for appellees.

SULLIVAN, Judge.

Dr. Harold H. Negley, Superintendent of Public Instruction and the Indiana State Board of Education (State Board), and Dr. Gary Weesner, Superintendent, Metropolitan School District of Washington Township and Metropolitan School District of Washington Township (Washington Township), defendants below, appeal the entry of summary judgment in favor of plaintiffs-appellees, John N. Baker (John) and his

parents, John E. and Shirley Baker (hereinafter the "Bakers").

The Bakers filed their lawsuit on April 8, 1980, charging that the defendants' refusal to pay educational and transportation expenses incurred on behalf of their mentally retarded son, was unconstitutional and contrary to state and federal laws. Upon cross-motions for summary judgment the trial court entered a judgment for the Bakers upon all their claims against Washington Township and the State Board. Damages were assessed in accordance with stipulations. The award included $19,-691.07 in unreimbursed tuition expenses to be paid by the State Board and $7,686 in transportation expenses from Washington Township. Judgment was then entered for Washington Township on its cross-claim against the State Board, seeking indemnity for its liability to the Bakers.

The State Board and Washington Township challenge the judgment in favor of the Bakers and present the following identical issues on appeal:

1. Whether the trial court was required to enter specific findings of fact and conclusions of law.

2. Whether the Indiana Administrative Adjudication Act (AAA) bars judicial relief because of the Bakers' failure to exhaust available administrative remedies.[1]

3. Whether the Education of all Handicapped Children Act (EAHCA), 20 U.S.C. § 1401 *et seq.* is a proper basis for the trial court's judgment.

4. Whether the notice provision of the Indiana Tort Claims Act, I.C. 34–4–16.5–6, precludes the Bakers' claim.

In addition, State Board presents the following issue:

1. I.C. 4–22–1–1 *et seq.* (Burns Code Ed.1982).

2. General statutory authority for the application process is found at I.C. 20–1–6–19 (Burns Code Ed.Supp.1984) and the Commission on General Education's regulations at 510 I.A.C. 7–2–1 *et seq.* (repealed March 3, 1983) (current version, 510 I.A.C. 7–2.1–1 *et seq.*).

5. Whether the trial judge erred in finding the State Board ultimately liable for payment of all educational and related expenses incurred on behalf of John N. Baker.

The parties submitted this claim upon stipulated facts and exhibits. The stipulations reflect that in 1975, John was identified as a mentally retarded child in need of special educational services. Upon the recommendation of personnel at Crossroads Rehabilitation Center in Indianapolis, John was approved for placement in a special program for educable retarded children. John attended such a program within Washington Township throughout school year 1975–76 although John's placement at the Institute of Logopedics (Institute) in Wichita, Kansas, was contemplated as early as November, 1975. At the Bakers' request, at that time, John was extensively evaluated at the Institute and recommended for placement in a specially developed program at the Institute. Pursuant to this recommendation, Washington Township prepared an application in January, 1976, requesting that the State Board approve John's placement at the Institute.[2] The State Board's approval was transmitted shortly thereafter. John's program in Kansas began June 28, 1976. A second similar application covering school year 1976–77 was prepared by Washington Township on August 3, 1976, and approved by the State Board on October 6, 1976.[3]

For the following school year, 1977–78, Washington Township again prepared an application which recommended that John's placement at the Institute be continued. The unsigned application was completed by Washington Township but apparently was not forwarded to the State Board for its approval. Despite this lack of formal approval, the Bakers and Washington Town-

3. Approval sheets for both 1975–76 and 1976–77 school years were not signed by anyone at the Division of Special Education; but the parties have stipulated that, at least for these two years, the State Board Division of Special Education concurred in the decision to place John at the Institute.

ship acquiesced in John's continued placement at the Institute, presumably relying upon the fact that for school years prior to fiscal year 1979 (school year 1978–79) State Board approval for such placement was routinely granted. Fiscal year 1979 was the first year in which funds were earmarked to permit payment of the excess costs of private school placements. Washington Township made transfer tuition payments for John's education during school years 1976–77 through the first semester of 1979–80, for a total of $4,550.

Washington Township's application for school year 1978–79 was similar, in most respects, to prior applications which had received summary approval from the State Board. The State Board disapproved this application. An amended form of the application was disapproved on March 5, 1979. Although the Bakers did not formally appeal the disapproval to the Commission, Bakers' attorney contacted the various defendants attempting to obtain review of the disapproval. The Bakers' attorney also prepared an application for school years 1979–80 and attempted to present it for the State Board's consideration; however, the State Board refused to accept any such application unless submitted by Washington Township.[4]

On November 4, 1979, John was evaluated at Riley Children's Hospital. As a result of evaluation, John was placed in a local, special education program beginning in January, 1980.

At trial, the Bakers successfully claimed that the State Board should bear the entire cost of educating John at the Institute.

The stipulated expenditures during the years 1975–76 through the first semester of 1979–80 totaled $27,307.07 and summary judgment was rendered accordingly.

## I.

The State Board and Washington Township first assert that the trial court erred by not accompanying its summary judgment with written findings of fact and conclusions thereon.

Ordinarily, a trial court is required to enter written findings of fact upon review of an administrative agency's decision. I.C. 4–22–1–18(d) (Burns Code Ed.Supp. 1984). This insures that a court will not substitute its judgment for that of the agency's in those matters which the legislature has committed to the agency's discretion and expertise. The State Board and Washington Township, however, have misconstrued the application of I.C. 4–22–1–18.

■■■ Where there exists no factual dispute and summary judgment is granted as to all the issues, findings of fact are ordinarily not required.[5] *Ahnert v. Wildman* (1978) 2d Dist., 176 .Ind.App. 630, 376 N.E.2d 1182. The granting of summary judgment necessarily entails a determination that no genuine issue of material fact exists, thus entitling the moving party to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56. This is particularly true where, as here, there was no factual dispute requiring resolution by the trial judge as this case was submitted upon stipulated facts and exhibits. The lack of written findings of fact under these circumstances does not constitute reversible er-

---

4. 510 I.A.C. 7–2–1(3) provided that:
"On the basis of data integrated from the evaluation and upon complete exhaustion of all possible alternatives for programming within the local community or neighboring communities, *the local school superintendent shall forward a properly documented recommendation for eligibility of the child and detailed information on a specific private facility* on Form SE–T to the Division of Special Education, Office of the State Superintendent of Public Instruction." (Emphasis supplied)

5. However, in some instances a trial court may be asked to give a statement of reasons for its

summary judgment if "... appellate review is frustrated by the lack of such statements." *Brandon v. State* (1976) 264 Ind. 177, 179, 340 N.E.2d 756, 758. To the same effect are *Shortridge v. Platis* (1984) 3d Dist., Ind.App., 458 N.E.2d 301; *Bond v. Peabody Coal Co.* (1983) 4th Dist., Ind.App., 450 N.E.2d 542; *Celina Mutual Insurance Co. v. Forister* (1982) 4th Dist., Ind. App., 438 N.E.2d 1007 and *Fort Wayne Patrolmen's Benevolent Association v. City of Fort Wayne* (1980) 4th Dist., Ind.App., 408 N.E.2d 1295.

ror. Our appellate review is therefore limited to determining whether the trial judge correctly applied the law to the stipulated facts in light of the legal issues as framed by the parties. *Brandon, supra,* 340 N.E.2d at 761.

## II.

The State Board and Washington Township assert that the trial court erred by failing to comply with the provisions of the Indiana Administrative Act (AAA), I.C. 4–22–1–1 *et seq.* (Burns Code Ed.1976). The extensive argument concerning the application of the AAA embraces one basic proposition. It is suggested that judicial determination of the Bakers' claim is precluded because of the Bakers' alleged failure to file a petition for judicial review within the fifteen (15) day limit prescribed by I.C. 4–22–1–14.

■ The AAA applies only to those agencies which have not been specifically excluded by the language of the act itself and which encompass statewide jurisdiction. I.C. 4–22–1–1; *South Bend Community School Corp. v. NEA-South Bend* (1983) 3d Dist., Ind.App., 444 N.E.2d 348; *Tippecanoe Valley School Corp. v. Leachman* (1970) 147 Ind.App. 443, 261 N.E.2d 880. The Commission on General Education (Commission) has final approval authority over all special educational placements and thus, exercises statewide jurisdiction. Washington Township is merely the initial applicant in the placement process and its decisions are not reviewable pursuant to the AAA. *See State ex rel. Newton v. Board of School Trustees* (1984) 3d Dist., Ind.App., 460 N.E.2d 533.

To the extent that the State Board rendered a decision adverse to the Bakers, the Bakers were presumably required to appeal to the Commission before resorting to a judicial remedy. For reasons which follow, however, we do not agree that the provisions of the AAA requiring exhaustion of administrative remedies bar the Bakers' entire claim.

The administrative regulations applicable to John's education are primarily directed at the initial identification and placement process. These administrative regulations provide specific procedures for evaluating a handicapped child and developing an appropriate educational program for that child within available state resources.[6] The regulations involve the identification of a child as handicapped and the appropriateness of a special educational program vis-a-vis attendance and participation in a regular public school program. The regulations also contain specific procedural protections for the rights of the child and his parents. Such protections include written notice to the parents at virtually every stage of the proceedings and assurances that the child's present educational placement (or suitable placement if the child is not currently enrolled) will continue during the pendency of any challenge to such placement.

When enrollment in a private school is contemplated, the administrative rules contain both general and specific governing procedures. I.A.C. (20–1–6–19)–1 *et seq.* This second set of procedures is obviously designed to permit private school placements in exceptional circumstances, and requires the individual *school corporation* to initiate the process. To be considered for placement under these rules, a child must be extensively evaluated by the school corporation which must also exhaust all available alternatives before recommending private placement. In this instance, the Division of Special Education must approve an application before private placement is initiated.

Contrary to the State Board's assertion, however, the two sets of administrative regulations are not mutually exclusive. Both sets of regulations were promulgated pursuant to Chapter 6 of Title 20 on education. Therefore, the rules in I.A.C. (20–1–6–19)–1 *et seq.* can be seen as providing

---

**6.** *See* I.A.C. (20–1–6–3)–1 *et seq.,* replaced by I.A.C. 7–1–1 through 7–1–12 (Rule S–1); I.A.C. (20–1–6–19)–1 *et seq.* replaced by 510 I.A.C. 7– 2–1 through 7–2–3 and subsequently recodified at 510 I.A.C. 7–2.1–1 *et seq.* (Burns Code Ed. 1984).

additional procedural guidelines for a child so severely handicapped as to warrant placement in a private school.

■ Construing these two provisions together, we conclude that there was no administrative procedure which the Bakers were required to exhaust prior to seeking judicial relief. For school years 1975–76 and 1976–77 all parties concurred in the decision to educate John at the Institute. There was no adverse determination by the State Board which the Bakers could have appealed since I.A.C. (20–1–6–19)–2 permits final appeal of a disapproved application. The Bakers' claim that the State Board is responsible for providing John with a free and appropriate education cannot be reasonably placed within the strictures of the AAA.

In 1977, Washington Township prepared an application for school year 1977–78 but apparently did not complete or forward it to the State Board. Although it is not clear whether the administrative regulations provided for parental involvement at this stage of the placement process, we note that with minimum effort, the Bakers could have investigated the status of this application. Nevertheless, this failure to present the application for the State Board's consideration cannot be reasonably charged against the Bakers for it was Washington Township, as the original applicant, who was obligated to insure that the application reached its intended destination. In any event, John apparently remained at the Institute during the school year and the State Board has not alleged how the lack of formal approval for 1977–78 presents an exhaustion of administrative remedies problem. State Board conceded that all such applications prior to 1979 received summary approval and there is no indication that the Bakers' 1977–78 application would have reached different treat-

ment. For all practical purposes, there is no distinction between school year 1977–78 and the previous years of John's placement at the Institute.

The application submitted in support of John's placement for school year 1978–79 was initially disapproved on September 18, 1979. A notation upon the transmittal sheet indicates that the Bakers were notified of the disapproval. The application was resubmitted to the State Board and again disapproved on March 5, 1979, with directions to Washington Township to notify the parents of the action taken.

The parties have stipulated that the disapproved application for 1978–79 was not formally appealed to the Commission; however, we do not adopt the State Board contention that the Bakers' entire claim is thereby subject to dismissal.

The regulations, readily accessible at I.A.C. (20–1–6–19)–2, permit final appeal of a disapproved application to the Commission. The court, however, is not precluded from considering the Bakers' application for school year 1978–79 if the record reflects that counsel for the Bakers repeatedly attempted to obtain some form of administrative review and was repeatedly thwarted. *See Indiana High School Athletic Ass'n v. Raike* (1975) 2d Dist., 164 Ind.App. 169, 329 N.E.2d 66. The record may well support a determination that continued attempts to obtain administrative relief would have been useless and unavailing with respect to the 1978–79 application.[7] In any event, we are unable to say, as a matter of law, that such failure requires the dismissal of the claim for failure to exhaust administrative remedies.

### III.

State Board and Washington Township also question whether the Education for all

---

7. For example, on July 17, 1979, a meeting was conducted between the Bakers, their attorney, Gerald L. Wagner of the Division of Special Education, and Mary Pickerell, Director of Special Education of Washington Township. The meeting resulted in agreement that the Bakers would provide a properly documented application which Washington Township would sponsor before the Division of Special Education

with appeal to the Commission on August 8th, if necessary. On August 3, counsel for the Bakers was informed that review by the Commission on the 8th would not be permitted. Further, the new Director of Special Education at Washington Township, Skip Johnson, refused to sponsor the application contending he was not bound by any agreements made prior to his replacing of Ms. Pickerell.

Handicapped Children Act (EAHCA), 20 U.S.C. § 1401 *et seq.*, is a proper basis for the trial court's judgment. The general assertion that EAHCA's "requirements" preclude "an award of damages" is, however, not sufficiently supported. Because the appellants have not adequately focused their arguments upon this matter, we need not address the issue.[8]

### IV.

■ State Board and Washington Township contend that the Bakers' claim should have been dismissed for failure to comply with the notice requirements of the Indiana Tort Claims Act, I.C. 34-4-16.5-6 (Burns Code Ed.Supp.1984). We recognize that the Tort Claims Act requires written notice to the attorney general and the appropriate state agency within one hundred eighty (180) days after a loss occurs. However, it is clearly inapplicable to the instant case.

There is no "injury to or death of a person, or damage to property." I.C. 34-4-16.5-2(4). The patently groundless assertion that the Bakers' claim "sounds in tort" deserves no further consideration.

### V.

State Board independently asserts that the trial judge erred in finding the Board solely liable for payment of all costs of John's private placement. The judgment award included $19,691.07 as reimburse-ment for "tuition expenses", but did not specify whether the award represented transfer tuition due, or whether the judgment included expenses over and above the transfer tuition amount paid by Washington Township.

Washington Township paid transfer tuition in the amount of $4,550, but it is not clear from the stipulations whether the payments were continuous during school year 1975–76 through the first semester of 1979–80 or whether they were discontinued prior to 1979. This distinction is crucial in light of the fact that I.C. 20-1-6-19 is the only statutory section which may provide a legal basis for the judgment in favor of the Bakers.[9]

This section authorizes the superintendent of public instruction to contract to pay these excess costs but clearly contemplates that such obligations will be incurred only in exceptional circumstances. Although the State Board approved John's replacement at the Institute for years 1975–76 and 1976–77, the Bakers have not shown how this approval, of itself, obligated the State Board to bear the entire cost involved. The Bakers do not contend that State Board approval of a private school placement for John is the equivalent of a contract authorized pursuant to I.C. 20-1-6-19. Since this theory was not presented to the trial judge, it cannot provide the legal basis for

---

8. For this reason it is unnecessary that we accept Bakers' argument that the State Board's receipt of EAHCA funds obligates the State Board to bear all costs of John's placement.

9. In 1975, I.C. 20-1-6-19 provided as follows: "Contracts with private schools.—The superintendent of public instruction is authorized to contract with in or out of state private schools to pay the excess costs of educating children of school age, who may or may not be of normal intellectual capacity, whose handicap is of such intensity as to preclude achievement in the local school setting and for which it is economically not feasible to establish a local or regional special education program: Provided, That it is determined through appropriate diagnosis that the child can profit educationally from such a program: Provided further, That any such payment of state moneys be made only in situations wherein the costs of such provision are over and above the regular cost of educating children of like age and grade level in the child's community of residence, and only after each such local school corporation provides its share of the total tuition cost which is the regular per capita cost of general education in that community.

"Local school boards are authorized to pay tuition support for handicapped children to attend schools approved by the superintendent of public instruction and the commission on general education following prior approval of each such child by the department of public instruction. The commission on general education shall formulate rules and regulations governing the types of handicapped children eligible for this program." [Current version at I.C. 20-1-6-19, Burns Code Supp.1984]

the judgment on appeal. *See Brandon, supra*, 340 N.E.2d at 761.

■ Instead, the Bakers argue that payment of all of John's educational expenses is mandated by I.C. 20–1–6–9 (repealed 1977), at least for years 1975–76 and 1976–77. This reliance is misplaced. The full text of I.C. 20–1–6–9 demonstrates that this provision was enacted "[f]or the purpose of reimbursing *school corporations* educating handicapped children under the terms of this act ...."[10] (Emphasis supplied) Since John's private placement was approved by Washington Township and by the State Board, the Bakers were entitled to receive only transfer tuition from Washington Township during this two-year period.

For school years subsequent to 1977–78 the Bakers have cited to administrative regulations which provide that a child is entitled to remain in his original placement during the pendency of any administrative or judicial proceeding. *See* 510 I.A.C. 7–1–3(G). Thus, the Bakers suggest that once John's placement was approved in 1976, he was entitled to remain there until 1980 when he was transferred to a local special education program. Nevertheless, the fact that John may have been entitled to continue in his then current placement does not dispose of the State Board's argument that it was not solely liable for tuition costs above the amount of transfer tuition due from Washington Township. State law directs payment in excess of transfer tuition only in situations in which the State Board has assumed such expenses. Unless the State Board had assumed these excess expenses, the Bakers were only entitled to receive transfer tuition from Washington Township.[11] *See* I.C. 20–1–6–19. However, that portion of the judgment which awarded tuition reimbursement did not specify whether the amount awarded represented only transfer tuition or included amounts in excess of the transfer tuition due from Washington Township. If the $19,691.07 consists of all transfer tuition, Washington Township is the proper party against which to assess liability. If the award represents excess tuition expenses, there is no legal basis for the judgment against the State Board or Washington Township as the Bakers were only entitled to receive transfer tuition.

The portion of the judgment awarding $7,686 for transportation expenses was not separately challenged. The Bakers are correct that transportation expenses are included within the statutory definition of "related services." *See* 510 I.A.C. 7–1–1(J). Thus it appears the Bakers were entitled to receive some reimbursement for transportation costs. The particular amount of transportation expenses was stipulated; therefore, the remaining question concerns the issue of liability as between the State Board and Washington Township.

■ There are several statutory provisions which address the question of which agency is responsible for providing transportation for handicapped students. Initially, I.C. 20–1–6–18.1 enacted in 1976, provided that:

"If a student with legal settlement in a school corporation is transferred to attend school in another school corporation because of a handicap or multiple handicaps, the *transferor* corporation shall provide any transportation which is necessary or feasible ...." (Emphasis supplied) (Burns Code Ed.Supp.1984)

In 1979, I.C. 20–1–6–18.2 was added to clarify the extent of the school corporation's liability with respect to transportation costs. This new section stated that:

"(a) The commission on general education shall promulgate rules which estab-

---

10. The predecessor of I.C. 20–1–6–9, Act of March 10, 1927, ch. 211, § 6, stated: "Any school corporation which establishes, organizes and maintains special classes as provided for in this act shall be entitled to be reimbursed by the state ...."

11. In return, Washington Township was entitled to receive regular state tuition support as if John had attended classes within the Washington Township School Corporation. *See* 510 I.A.C. 7–2–3 (repealed 1983).

lish limitations on the amount of transportation which may be provided in the student's individualized education program. Unless otherwise specially shown to be essential by the child's individualized education program, in case of residency in a public or private facility, these rules shall limit the transportation required by the student's individualized education program to his first entrance and final departure each school year plus round trip transportation each school holiday period and two (2) additional round trips each school year.

\*     \*     \*     \*     \*     \*

"(d) Whenever a student is placed in a private facility under I.C. 20–1–6–19 in order to receive a special education because the student's school corporation cannot provide an appropriate special education program, the school corporation in which the student has legal settlement shall bear the cost of transportation required by the student's individualized education program. However, if the student's legal settlement cannot be ascertained, the commission on general education shall bear the cost of transportation required by the student's individualized education program." [Current version at Burns Code Ed.Supp.1984]

According to the above statutory provisions, the *individual* school corporations are given the responsibility of providing transportation for handicapped students such as John Baker.

The statutory sections set out above amply support the portion of the judgment which awarded the Bakers transportation expenses. However, as the above provisions indicate, Washington Township, not the State Board, is primarily liable for the Bakers' transportation costs.

The cause is reversed and remanded for further proceedings consistent herewith.

MILLER, J. (participating by designation), and SHIELDS, J., concur.