Douglas W. WAY, individually and on Behalf of all members of the South Bend Police Department similarly situated, Plaintiff-Appellant,

v.

CITY OF SOUTH BEND, Defendant-Appellee.

No. 3–885 A 228.

Court of Appeals of Indiana, Third District.

Aug. 28, 1986.

J. Christopher Warter, South Bend, for plaintiff-appellant.

Richard L. Hill, City Atty., Carolyn V. Pfotenhauer, Asst. City Atty., South Bend, for defendant-appellee.

GARRARD, Judge.

In October 1984 the South Bend Board of Public Safety adopted a merit plan for the South Bend Police Department.

The plan established a Promotion Review Board which was to prepare a promotion ranking list based on the composite scores received by those seeking promotion. When a vacancy occurs the top three officers on the list are eligible to fill it. The Chief of Police, who is not a member of the review board, makes the selection.

Three factors are considered in calculating the composite score used for the Promotion Ranking List. A written examination is to be given every two years. Results of the examination constitute 50% of an officer's composite score. Years of service count 20% in determining the score, with an officer receiving one point for each full year of service on the force, up to a maximum of 20 years. The remaining 30% is based upon a performance evaluation. Evaluations were to take place semi-annually, but the initial evaluation was not to be completed until September 30, 1985. Until two evaluations have been made, each officer is automatically credited the full 30 points for this portion of his composite score.

Douglas Way applied for the June 1985 examination hoping to be promoted to sergeant. After taking the examination he commenced this suit challenging several aspects of the promotion procedure. The trial court granted summary judgment for the city.

Way contends that the merit plan adopted by the city fails to meet the requirements of IC 36–8–3.5–1 et seq. enacted by the General Assembly in 1981. The South Bend plan clearly does not follow the merit plan established by that chapter.[1] The question we must determine is whether it was required to. IC 36–8–3.5–1 provides:

---

1. For example, IC 36–8–3.5–13 requires a competitive oral interview as a part of the promotion ranking process.

"Applicability of chapter—Effect of chapter on existing merit systems.—(a) This chapter applies to each municipality or township that has a full-time, paid police or fire department. It provides the exclusive statutory manner for such a unit to exercise the power of establishing a merit system for its police or fire department. This chapter does not affect merit systems established under any other authority, except as provided by subsection (b).

(b) If a city had a merit system for its police or fire department under IC 18-4-12, IC 19-1-7, IC 19-1-14, IC 19-1-14.2, IC 19-1-14.3, IC 19-1-14.5, IC 19-1-20, IC 19-1-21, IC 19-1-29, IC 19-1-29.5, IC 19-1-31, IC 19-1-31.5, or IC 19-1.37.5 [18-4-12-1—18-4-12-59, 19-1-7-1—19-1-7-9, 19-1-14-1—19-1-14-26, 19-1-14.-2-1—19.1-14.2-20, 19-1-14.3-1—19.1-14.3-21, 19-1-14.5-1—19-1-14.5-6, 19-1-20-1—19-1-20-7, 19-1-21-1—19-1-21-18, 19-1-29-1—19-1-29-10, 19-1-29.5-1—19-1-29.5-29, 19-1-31-1, 19-1-35.1-1—19-1-35.1-23, or 19-1-37.5-1—19-1-37.5-23], it may retain that system by ordinance of the city legislative body passed before January 1, 1983. The ordinance must incorporate all the provisions of the prior statute and may not be amended or repealed by the legislative body before January 1, 1985. If the legislative body decides to repeal the ordinance after December 31, 1984, the legislative body shall in the repealing ordinance also establish a new merit system under section 3 [36-8-3.5-3] of this chapter. After the new merit system takes effect, all members of the department are entitled to the same ranks and pay grades they held under the prior system, subject to changes made in accordance with this chapter.

(c) If a city had a merit system for its police or fire department under a prior statute but fails to retain that system under subsection (b), the city legislative body shall, before July 1, 1983, pass an ordinance to establish a new merit system under section 3 [36-8-3.5-3] of this chapter. If the new merit system is approved as provided by section 4 [36-8.3-5-4] of this chapter, it takes effect as provided by that section. However, if the new merit system is rejected under section 4 of this chapter, within thirty [30] days the city legislative body shall adopt an ordinance to retain the prior merit system. The prior merit system remains in effect until the new merit system takes effect, after which time all members of the department are entitled to the same ranks and pay grades they held under the prior system, subject to changes made in accordance with this chapter."

The trial judge determined that South Bend's merit system was established pursuant to IC 36-8-3-2 [2] rather than IC 36-8-3.5-1. It noted that IC 36-8-3.5-1(a) specifically excludes from its coverage merit systems "established under any other authority."

Way urges that this was in error. He points to the statement contained in IC 36-8-3.5-1(a) that the statute "provides the exclusive statutory manner for such a unit to exercise the power of establishing a merit system...." He contends the exclusion, by using the word "established," is limited in application to plans which had been created before IC 36-8-3.5-1 et seq. was enacted.

This argument has appeal because of the statutory use of the term "exclusive" and because of the potential benefit a requirement of uniformity would bestow upon courts and commissions required to review issues arising under the application of merit systems.

Nevertheless, a careful consideration of the statute leads us to conclude the legislature did not intend Way's proffered construction.

Initially, it should be recalled that in 1980 the legislature adopted a "home rule" poli-

**2.** IC 36-8-3-2 provides generally that in second and third class cities the safety board has exclu-

sive control over all matters and property relating to the police department.

cy concerning municipal government. IC 36–1–3–2 provides:

"The policy of the state is to grant units all the powers that they need for the effective operation of government as to local affairs."

This provision is followed in IC 36–1–3–3 by abolition of any presumption against implied powers and the statement that "[a]ny doubt as to the existence of a power of a unit shall be resolved in favor of its existence." *See also* IC 36–1–3–6.[3] Thus, the trial court correctly determined that IC 36–8–3–2 is broad enough to authorize the safety board to create a merit system unless IC 36–8–3.5–1 et seq. provides the exclusive means for doing so.

We turn then to the provisions of that act. The title to the act (P.L. 316, Acts 1981) describes its subject as "a new chapter concerning a *model* public safety merit system." (Emphasis added) That certainly is not conducive to interpreting the act as providing the exclusive means of establishing a merit system. *See, e.g., State ex rel. Penn R.R. Co. v. Iroquois Conservancy Dist. Ct.* (1956), 235 Ind. 353, 133 N.E.2d 848 (contents of statute to be covered by title).

Moreover, the language employed in section 1 does not bear out a mandate of exclusivity. We presume that all words employed in a statute were intended to have meaning. They will be treated as surplusage only when no other possible course is open. *Kidwell v. State* (1967), 249 Ind. 430, 230 N.E.2d 590, *cert. denied*

392 U.S. 943, 88 S.Ct. 2326, 20 L.Ed.2d 1405.

Two sentences in section 1 are critical. The first states that the chapter

"provides the exclusive statutory manner for such a unit to exercise the power of establishing a merit system for its police or fire department."

If the statute were intended to provide the exclusive manner for establishing merit systems, inclusion of the word "statutory" would be surplusage. Giving meaning to "statutory" implies there are non-statutory means for creating merit systems. That would be consistent with the home rule provisions and with the repealer contained in section 3 of P.L. 316 repealing the theretofore existing *statutes* providing merit systems in various class cities.[4] In addition it is reasonable to suppose that the legislature desired to provide cities with a single "model" for the creation of merit systems and that it desired to dispense with the prior practice which entailed the adoption of numerous statutes of limited application.

Similarly, the section states:

"This chapter does not affect merit systems established under any other authority, except as provided by subsection (b)."

Since subsection (b) provides for readoption by ordinance of plans created under all of the prior specific statutes, the implication is that plans may or might have been established under yet some other additional authority. Otherwise there is no reason to relegate subsection (b) to the status of an exception.[5]

---

**3.** "(a) If there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner.

(b) If there is no constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise that power must either:

(1) Adopt an ordinance prescribing a specific manner for exercising the power; or

(2) Comply with a statutory provision permitting a specific manner for exercising the power.

(c) An ordinance under subsection (b)(1) must be adopted as follows:

(1) In a municipality, by the legislative body of the municipality.

(2) In a county subject to IC 36–2–3.5 [36–2–3.5–1—36–2–3.5–6] or IC 36–3–1 [36–3–1–1—36–3–1–12], by the legislative body of the county.

(3) In any other county, by the executive of the county."

**4.** These are the same statutes referred to in subsection (b) of IC 36–8–3.5–1, *ante.*

**5.** We reject the city's assertion that use of the word "established" necessarily implies past tense. The statute may be read to mean either

We therefore conclude that IC 36–8–3.5–1 et seq. does not provide the exclusive means of creating merit systems for firemen and policemen. It follows that the court was correct in concluding that the South Bend plan was not contrary to law because it failed to comply with that act.

Way next contends the trial court erred by holding a hearing on the same day that the defendants' motion for summary judgment was filed.

On July 10, 1985 the defendants filed a motion to dismiss which was accompanied by several affidavits. According to Indiana Rules of Procedure, Trial Rule 12(B)(8) such a motion is to be treated as one for summary judgment. On the same day, a hearing was held. Way now objects claiming that under TR 56(C) he was entitled to 10 days notice before a hearing could be held.

While this may be true as an abstract proposition it is possible to waive one's right to 10 days notice under TR 56. *Ahnert v. Wildman* (1978), 176 Ind.App. 630, 376 N.E.2d 1182. In the case before us, when referring to the defendants' motion to dismiss, Way's attorney stated "Although I have just received this, I am willing to proceed with it." Record at 207. Since Way's attorney specifically stated that he was willing to proceed, and since the trial court gave him an opportunity to file opposing affidavits and motions after the hearing, we find no error.

After the hearing, Way alleged that the defendants' affidavits failed to show that they were made on personal knowledge by a person competent to testify. *See* TR 56(E). He moved to strike the affidavits. On appeal, he claims that the trial court committed reversible error by failing to rule on this motion. He also argues the motion's merits.

We find no error. In this state it is the rule that error cannot be based on a court's failure to rule on a motion. *Watkins v. State* (1983), Ind., 446 N.E.2d 949. Trial Rule 53.1 provides a remedy if the trial court fails to rule on motions before it. If a party fails to use that rule, any error is waived. *Misner v. Presdorf* (1981), Ind. App., 421 N.E.2d 684.

Furthermore, the trial court could have been justified in denying the motion either because it was not timely made or because it could have inferred personal knowledge and competence from the affidavits.

When the defendants offered their affidavits into evidence, Way specifically stated that he had no objection to them. Record at 206. Thus, the trial court would not have been wrong to deny the motion to strike. *Wolf Produce and Transportation Co. v. Lang Trucking, Inc.* (1965), 136 Ind. App. 571, 203 N.E.2d 308.

Finally, it is not necessary that an affidavit specifically state that it is made on personal knowledge by someone competent to testify. It is sufficient if knowledge and competence can be inferred. *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 730. The affidavits contain detailed statements of facts by city officials. From their general content and tenor, one can infer both personal knowledge and competence.

Way argues that the Board of Public Safety cannot delegate its discretionary functions to the Review Board. *See* 56 Am.Jur.2d *Municipal Corporations* Section 196. He asserts that it has done so, and thus when the review board matched his examination score with his name, he was defamed.

Appellate Rule 8.3(A)(7) requires an argument containing a "clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review." Way has not identified any of the discretionary powers that he claims the review board was granted. Thus he has failed to establish reversible error.

Even ignoring this defect, there was no error. We have examined the merit plan. The review board calculates scores based on defined rules. Such ministerial

"which were established" or "which are established."

807

functions can be delegated. *Campbell v. Heiss* (1944), 222 Ind. 297, 53 N.E.2d 634. The review board does not have the discretion to decide who is to be promoted. The chief, who is not a member of the review board, has that power. As we understand the plan, the only discretion the review board has is the discretion to order a new examination should one third of those taking it score below 70%. Since it does not appear that this power was used, its existence could not harm Way. Without harm, there is no reversible error.

Since the Board of Public Safety could delegate ministerial functions to the review board, there was no unauthorized publication of test results when the review board matched Way's name with his exam score.

We can identify two more aspects of Way's argument and address them briefly. Way claims that he was wronged when he was not given review materials until the day before the merit examination, while other officers were provided with them one week earlier. Construing all of the evidence from the affidavits in the light most favorable to Way, we disagree.

The South Bend Police Department required Way to take his summer vacation between June 8 and 30, 1985. At some point prior to June 10, 1985 Way asked the director of the Police Academy Training Bureau for all additional materials that would help him prepare for the coming exam. He was told that there were none. On June 10, after Way had left for vacation, the director received and posted a list of additional materials. This was the first time that the director became aware that there were more materials. Way's affidavit, Record at 110.

Way has not established an issue that anyone wrongfully failed or refused to give him the list of materials. Thus, he has failed to make out a claim on that basis.

Next Way claims that the review board failed to follow the merit plan. He alleges that the plan required performance evaluations and that none had been made as of July 10, 1985. We disagree. The plan expressly states that "[t]he initial rating period will be April 1, 1985 to September 30, 1985." Record at 60. Thus, the plan was being followed.

There was no error committed by the entry of summary judgment.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.