JOHN GUY *vs*. SAMPSON TAMS.—*December*, 1847.

Where the court is called upon to instruct the jury as to the law arising on the facts, this impliedly assumes the correctness of the pleadings.

Where a claim would be barred by the statute of limitations, but for its revival by a subsequent promise to pay, it is not necessary to declare upon the new promise. Its effect is to revive the old, original, cause of action, by removing the statutory bar. It is not material whether the new promise be absolute or conditional. It is a matter of evidence, not of pleading. If conditional, it must appear to have been performed.

Where a debtor promises that, if allowed a little time, he would pay all his debts, and the creditor forbore to sue for two years, that is sufficient performance.

Whether a new promise, made by a debtor within the time of limitations, applies to the original debt, is a fact for the jury.

Before the court can grant a prayer of the defendant—that the evidence offered by the plaintiff does not remove the bar of the statute of limitations—it must assume the truth of every fact, in support of the plaintiff's claim, which the jury, under the testimony, are competent to find.

To remove the bar of the act of limitations, it is not necessary that the creditor, at the time of a new promise, should exhibit the evidence of his claim, or state the precise nature or amount thereof. These are facts for the jury, who must find to what debt or claim the new promise related. If the plaintiff shows but a single indebtedness, it may apply to that; and then, if the debtor alleges a different debt, the *onus* of proving it rests on him.

APPEAL from *Baltimore* County Court.

This was an action of *assumpsit*, commenced on the 6th December, 1843, by the appellee against the appellant. The defendant pleaded *non assumpsit* and limitations.

After verdict for the plaintiff, there was a motion for a new trial, which the County Court overruled.

The plaintiff offered in evidence the following notes, to wit:

" *Phila.*, *July 5th*, 1839.

"$112 40.—Sixty days after date, I promise to pay *Sampson Tams*, or order, $112 40, value received, without default; payable at the counting-house of *Mr. M. Newkirk, Market Street.*                    JOHN GUY."

" *Phila.*, *July 5th*, 1839.

"$112 40.—Ninety days after date, I promise to pay *Sampson Tams*, or order, without defalcation, for value received,

$112 40; payable at the counting-house of *Mr. Matthew New-kirk, Market Street.* JOHN GUY."

The plaintiff then called *Kerr* as a witness, who proved, that on 25th Nov. 1841, *Mr. Sampson Tams*, plaintiff, called with witness at *Guy's house;* and in the course of conversation with *Guy, Tams* said, you (*G.*) are aware that I never troubled you for the payment of what you owed me. *Guy* then said, I am aware of it, and if I am allowed a little time, I will pay your debt; and that he would certainly do his best for him, *Tams.*

On cross-examination, witness said he had not been invited to go to *Guy's house* to hear any conversation between *T.* and *G.;* that he made a memorandum of the conversation the next day in one of his books; and on producing it, the memorandum was as follows:

Memorandum. On 25th Nov. 1841, *Mr. Sampson Tams, W. J. Kerr* and myself, called in the evening about ten o'clock at the public house, kept and known as *Guy's Monument House;* in course of conversation between *Mr. Guy* and *Mr. Tams,* he, *Mr. T.* said, that he never troubled him for the payment of what he (*Guy*) owed him. Whereupon, *Mr. Guy* said he was aware of that, and if he was allowed a little time, he would pay his debt; and that he would most certainly do his best for *Mr. Tams.*

*E. M. Kerr,* witness, then said, that he had first made the memorandum to read "all his debts," but immediately corrected it by erasing the word "all," and the letter "s" after debt—thus applying *Guy's* promise only to *Tams'* debt, because he so understood *Mr. Guy* to say. Witness also stated that he was, for many years, a partner of *Mr. Tams,* but not until after the debt of *Guy's* was contracted, and is not interested therein. Whereupon, defendant prayed the court as follows:

1st. That if the jury shall believe that, at the interview between *Tams* and *Guy, Tams* said to *Guy,* I never troubled you for the payment of what you owed me—and *Guy* said he was aware of it, and if he was allowed a little time, he would pay all his debts; and that he, *Guy,* would most certainly do his

best for *Mr. Tams;* that such is not a new assumption to take the case out of the statute of limitations.

2d. That if the jury believe that *Tams* went with witness, *Kerr*, to *Guy's* house, and that while there, *Tams* entered into conversation with *Guy* and said to him, I never troubled you for the payment of the debt you owed me; but did not produce or shew any evidence or evidences of debt to said *Guy*, nor say nor intimate that he then held two notes of said *Guy*, or indicate to *Guy*, in any manner, the amount of his claims then, although the jury believe that in that conversation *Guy* did say, if you will allow me a little time, I will pay your debt, and he would certainly do his best for him—does not remove the bar of the statute of limitations.   Both of which prayers, the court (ARCHER, C. J., PURVIANCE AND LE GRAND, A. J.,) refused to grant.   Defendant excepted.

The defendant prosecuted this appeal.

The cause was argued at December term, 1846, before DORSEY, CHAMBERS, MAGRUDER and MARTIN, J.

By MEREDITH for the appellant, and

By MCMAHON for the appellee.

DORSEY, J., delivered the opinion of this court.

The defendant's first prayer is as follows :· .

" That if the jury shall believe, that at the interview between *Tams* and *Guy, Tams* said to *Guy*, I never troubled you for the payment of what you owed me; and *Guy* said he was aware of it, and if he was allowed a little time, he would pay all his debts, and that he, *Guy*, would certainly do his best for *Mr. Tams;* that such is not a new assumption to take the case out of the statute of limitations."

This prayer raises no question as to the conformity of the proof to the pleadings in the case; it impliedly assumes the correctness of the pleadings; and simply calls on the court to instruct the jury, as to the law arising on the facts which it contains.   But were it otherwise, and the court below

were assumed to have made its refusal as well upon the pleadings as the proof recited in the prayer, the propriety of the decision would not be affected by the assumption. In this State, where a claim would be barred by the statute of limitations, but for its revival by a subsequent promise to pay, it is not necessary to declare upon the new promise. Its effect is not to give a new and substantive cause of action, which must be declared on as such, but to revive the old, original, cause of action, by removing the statutory bar. The original cause of action may be declared on, as it has been in this case, in the same manner as if it had never been obnoxious to the plea of limitations. If such be the law where the new promise is made, after the statutory bar has become complete, *a fortiori* should, such, the law, be applied to a case like the present, where before the bar attached to it, the new promise was made—and in this respect, it is immaterial whether the new promise be absolute, or conditional. It is wholly a matter of evidence, not of pleading; and the original cause of action is as effectually revived, the bar of the statute as fully removed, by a conditional promise, the condition of which has been performed, as it would be by an absolute promise.

What is the nature of the new promise stated in the prayer to have been made in the case before us? That, if he were allowed a little time he would pay all his debts. The condition for the allowance of a little time has been fully performed by the forbearance of the plaintiff below for nearly two years in the prosecution of his claim. To the interpretation given by the appellant's counsel to the concluding words of the promise, and that he, *Guy*, would certainly do his best for *Mr. Tams*, we cannot accede. Those words were not used to revoke or change the previous promise to pay if a little time were allowed him; but to strengthen and inspire confidence in the promise made, and to induce its acceptance. Had it been the intent of the appellant to promise to pay when he should be able, he would have used apt words for that purpose, and not made, as he did, a positive promise of payment, if but a little time were allowed him. In refusing the instruction re-

quired by this prayer, the County Court does not say that the promise made, if found by the jury, is sufficient to take the case out of the statute of limitations. In doing so, it would have trenched upon the province of the jury, in finding or assuming the fact, that the promise was made in reference to the debt due the appellee, of which debt, proof had been adduced before them. By granting the prayer, the court would in effect have instructed the jury, that under the proof in the cause, it was not competent for them to find that fact; and in doing so, it is conceived there would have been manifest error. We therefore approve of the court's refusal of the defendant's first prayer.

By the second prayer, the defendant called on the court to instruct the jury, " that if the jury believe that *Tams* went with witness, *Kerr*, to *Guy's* house, and that while there, *Tams* entered into conversation with *Guy*, and said to him, I never troubled you for the payment of the debt you owed me, but did not produce or show any evidence or evidences of debt to said *Guy*, nor say, nor intimate, that he then held two notes of said *Guy*, or indicate to *Guy* in any manner the amount of his claim, then, although the jury believe, that in that conversation *Guy* did say, if you will allow me a little time I will pay your debt, and he would certainly do his best for him, does not remove the bar of the statute of limitations." Before the court could have granted this prayer, it must assume the truth of every fact in support of the plaintiff's claim, which the jury under the testimony before them, were competent to find. It must, therefore, assume, as facts found by the jury, that apart from the statutory bar, the defendant was indebted to the plaintiff in the amount of the two promissory notes, of which he had given evidence; that such indebtedness was the identical debt to which the plaintiff and defendant referred in their conversation detailed in the prayer; and that since the promise, nearly two years elapsed before the plaintiff had instituted the present action for the recovery of his claim. These were facts *dehors* the prayer, and for the finding of which, by the jury, there was evidence before them legally suffi-

cient for that purpose. To remove the bar of the statute by a subsequent promise to pay, it is not necessary that the creditor at the time of such promise, should exhibit the evidence of his claim, or state the precise nature or amount thereof. These are facts to be found by the jury, who try the issues joined between the parties in the suit instituted, for the recovery of the debt. The jury must also find to what debt or claim the subsequent promise related. Should the evidence on the part of the plaintiff show but a single indebtedness, the subsequent promise might well apply to it. If the debtor alleges that there was a different debt to which his promise might apply, the *onus* of proving it rests on him. See 2 *Greenleaf's Ev.* 356, *sec.* 441. To have warranted the court in giving the instruction demanded by the second prayer, the proof in the cause must have been legally insufficient to have authorized the jury in finding the two following facts, viz: That the promise related to the debt, of which testimony had been given; or that after the promise, a little time was not given by the plaintiff before the institution of his suit. Believing the testimony before the jury amply sufficient to warrant them in finding both those facts, the County Court committed no error in refusing the defendant's second prayer.

JUDGMENT AFFIRMED.