# HOOVER *v.* WILLIAMSON

[No. 8, September Term, 1964.]

251

*Decided October 13, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Harold Buchman* for the appellant.

*Alva P. Weaver, III,* and *Frank J. Vecella,* with whom were *Robert E. Coughlan, Jr., G. C. A. Anderson, Preston A. Pairo, Jr., Lord, Whip, Coughlan & Green* and *Anderson, Coe & King* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Each year X-ray examinations of the chests of certain employees of General Electric Company are required by the company under the direction and supervision of Dr. C. Vernon Williamson, a physician who is paid for his services by the company. One of those who was so examined was the appellant, Willard Hoover, who had worked for the company for many years in a job which subjected him to exposure to silica dust.

Alleging that he has silicosis in serious and permanent form, which causes him pain and disability and results in medical expenses and loss of time from work, Hoover sued General Electric and Dr. Williamson in the Superior Court of Baltimore City for causing his condition. The count against General Electric which is not before us for consideration in this appeal was under an option in the Workmen's Compensation law, Code (1957), Art. 101, Sec. 44 ("If injury * * * results * * * from the deliberate intention of his employer to produce such injury * * * the employee * * * shall have the privilege either to take under this article or have cause of action against such employer, as if this article had not been passed."). Judge Byrnes permitted amendment to the count of the declaration against Dr. Williamson and then sustained a demurrer to the amended count, as he had to the original count. Hoover appealed.

The amended count against Dr. Williamson, as particularized, alleges that Hoover has been exposed to silica dust for the seventeen years of his employment at General Electric, that four or five years prior to November 1, 1961, Dr. Williamson, "a physician retained by said company," in the course of an annual X-ray examination of his chest, "purported to advise plaintiff concerning his condition," that is, that he had "a little infection on the lungs"—and that Dr. Williamson "made representations to him, acting as plaintiff's physician, and also referred him to another consultant." It is then alleged that the X-ray examination "did, in fact, clearly reveal" to Dr. Williamson that Hoover had silicosis and that Dr. Williamson "* * * wilfully and deliberately concealed such knowledge from the

plaintiff, affirmatively misrepresented to him the nature of his condition and concealed from him the recommendations * * *" of the consultant, with the result that his lung condition has become a serious and permanent disease which was caused by. Dr. Williamson's breach of professional duty to Hoover as his physician and the wilful concealment of such condition.

The demurrer to the amended declaration says it lacks facts showing a physician-patient relationship; in the absence of such a relationship Dr. Williamson owed Hoover no duty; the referral of Hoover to a consultant did not, in itself, create a physician-patient relationship; Dr. Williamson was retained by the company and not by Hoover and any duty the doctor owed was to the company and not to Hoover and, finally, that the declaration showed on its face that Hoover knew or should have known of his condition more than three years prior to the filing of suit and is barred by limitations.

The appellee is right in his contention that ordinarily recovery for malpractice or negligence against a doctor is allowed only where there is a relationship of doctor and patient as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill and the patient will pay for such treatment, and there has been a breach of professional duty to the patient. Thus, it has been held that there is not a doctor-patient relationship between: (a) a prospective or actual insured and the physician who examines him for the insurance company; or (b) a prospective or actual employee and the doctor who examines him for the employer.[1]

There is, however, a broader, a more fundamental rule of long standing under which a physician may incur a tort obligation which is nonconsensual and independent of contract. This is the general rule that one who assumes to act, even though gratuitously, may thereby become subject to the duty

1. (a) Bouligny v. Metropolitan Life Ins. Co. (Mo. App.), 133 S. W. 2d 1094; Metropolitan Life Ins. Co. v. Evans (Miss.), 184 So. 426; (b) New York Cent. R. Co. v. Wiler (Ohio St.), 177 N. E. 205; Jones v. Tri-State Telephone and Telegraph Co. (Minn.), 136 N. W. 741; Mrachek v. Sunshine Biscuit, Inc. (N. Y.), 123 N. E. 2d 801; Lotspeich v. Chance Vought Aircraft (Tex.), 369 S. W. 2d 705.

of acting carefully, if he acts at all. *Restatement, Torts,* Sec. 325, says the law is that one who gratuitously undertakes to render services which he should recognize as necessary to another's bodily safety, and leads the other in reasonable reliance on the services to refrain from taking other protective steps, or to enter on a dangerous course of conduct, "* * * is subject to liability to the other for bodily harm resulting from the actor's failure to exercise reasonable care to carry out his undertaking." See also 2 Harper and James, *The Law of Torts,* Sec. 18.6.

In *Edwards v. Lamb* (N. H.), 45 Atl. 480, the wife of a patient was advised by the doctor that there was no danger in her helping him dress her husband's infected wound. She did so and became infected with septic poisoning and sued the doctor. In holding that a demurrer was properly overruled, the Court said:

> "Nor is it necessary to decide whether, in the absence of any statement by the defendant, he would be liable. The case is one of positive action, not merely of failure to act. The declaration alleges that the defendant informed the plaintiff that there was no danger of infection, and when he did this he voluntarily assumed certain obligations. The fact that his duty, as to her, was merely to advise, and not to administer treatment, is immaterial. * * * That when he advised her he assumed the obligation to use due care in so doing is not open to doubt. * * * The gratuitous character of the services rendered to the plaintiff would not excuse the defendant's failure to exercise such care as the circumstances demanded."

See also *Harriott v. Plimpton* (Mass.), 44 N. E. 992; *Beadling v. Sirotta* (N. J.), 197 A. 2d 857, 860 ("Whether or not a physician-patient relationship exists, within the full meaning of that term, we believe that a physician in the exercise of his profession examining a person at the request of an employer owes that person a duty of reasonable care."); *Du Bois v. Decker* (N. Y.), 29 N. E. 313; *Johnson v. Borland* (Mich.), 26 N. W. 2d 755; Louisell & Williams, *Trial of Medical Mal-*

*practice Cases,* p. 191 (1960, Supp. 1963) ; 41 Am. Jur. *Physicians & Surgeons* Sec. 71, p. 193; 70 C. J. S. *Physicians & Surgeons* Secs. 46 and 52, pp. 954 and 975; 2 Intramural L. Rev. 158. *Cf. Merchants National Bank v. Morriss* (1st Cir.), 269 F. 2d 363; *Andrews v. Davis* (Me.), 148 Atl. 684; *Davis v. Rodman* (Ark.), 227 S. W. 612; *Jones v. Stanko* (Ohio), 160 N. E. 456.

It may be assumed that if Dr. Williamson had done no more than direct or supervise the X-ray examination of Hoover, his only duty would have been to General Electric. The allegations of the amended count against Dr. Williamson, however, go further. Dr. Williamson urges that these further allegations are not statements of fact but, rather, are no more than the conclusions of the pleader, Hoover. We think, however, that in the context of the whole of the amended count under consideration, the allegations were of facts that Dr. Williamson undertook to advise Hoover of his condition of health, referred him to a consultant (expert in the field) and, after this consultation, both affirmatively undertook to advise Hoover again and, contrary to his professional obligations, both wrongfully represented the seriousness of his condition (it may be inferred by permitting him to continue to work in the same injurious environment at General Electric) and concealed from him the recommendations to the contrary of the consultant, all to the injury of, and damage to, Hoover.

The allegations amount to more than that the doctor kept silent after review of the X-ray revelations and the findings of the consultant. The charge of affirmative misrepresentation was coupled with the charge of concealment of the consultant's recommendations and, under the circumstances, made the concealment as much a breach of duty as the affirmative misrepresentation. Harper and James, *op. cit.,* Sec. 18.6; *Pashley v. Pacific Electric Co.* (Cal.), 153 P. 2d 325, 329.

The allegations of the whole amended count against Dr. Williamson, would constitute, if proven, a cause of action against the doctor, unless limitations stand as a bar.

We do not on this appeal reach the question of whether limitations is a bar to Hoover's recovery, because in an action at law limitations must be raised by special plea, Md. Rule 342

c 2 (a) ; *Donnally v. Montgomery County Welfare Board,* 200 Md. 534; *Simms v. Lloyd,* 58 Md. 477; and may not be raised by demurrer, except where the time within which suit must be filed is a part of the right to sue and not, like an ordinary statute of limitations, a matter of the remedy. *Chandlee v. Shockley,* 219 Md. 493, and cases cited; *Brack v. Evans,* 230 Md. 548. This may be so historically because in an ordinary suit at law in which limitations go to the remedy rather than the right to a cause of action, it is not necessary for the plaintiff to anticipate the defense of limitations and plead facts in avoidance thereof in stating his cause of action. 1 Poe, *Pleading and Practice* (Tiffany Ed.), Sec. 618, p. 645, and, therefore, the plaintiff need not declare a new promise relied on to avoid the statute, it being sufficient if he sets up the new promise in his replication after the defense of the statute has been interposed by plea. *Felty v. Young,* 18 Md. 163; *Guy v. Tams,* 6 Gill 82.

In equity, as in cases at law in which the statutory bar is a part of the right of action, if the pleading of the plaintiff shows on its face that the bar of time is applicable, limitations may be raised by demurrer. *Smith v. Smith,* 211 Md. 366; *Rettaliata v. Sullivan,* 208 Md. 617.

The Maryland Rules reflect the differences in the requirements of pleading. Rule 371 b "Defenses-Generally" (to a bill of complaint and petitions in equity) provides that "any defense to any bill or petition, which appears on the face thereof, shall be made either by demurrer or by answer." Rule 342 c 2 (a), applicable to suits at law, provides that "the following matters of defense must be specially pleaded in an action *ex delicto*:

> (a) Limitations—That the plaintiff's action is barred by the statute of limitations (except in an action of ejectment)."

Rule 342 d 2 requires that a plea of limitations be filed within the time required by Rule 307 (Time for Defendant's Initial Pleading), but Rule 309 a has a safeguard providing that if a demurrer (as well as other specified preliminary pleadings) is filed, the time for pleading, "including a plea of limitations," shall be enlarged, without special order, to fifteen days after disposition of the demurrer.

Since the demurrer to Hoover's amended declaration against Dr. Williamson was wrongly sustained, the case will be remanded.

*Order reversed, with costs, and case remanded for further proceedings.*