545 A.2d 354

Donna C. ERVIN and Donna C. Ervin, Executrix of the
Estate of Thomas J. Ervin, Deceased, Appellant,

v.

AMERICAN GUARDIAN LIFE ASSURANCE COMPANY and
Norman S. Knee, D.O., Appellees.

Superior Court of Pennsylvania.

Argued April 26, 1988.

Filed July 29, 1988.

Timothy J. Savage, Philadelphia, for appellant.

Edward C. Mintzer, Jr., Philadelphia, for Knee, appellee.

Before CAVANAUGH, WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

In this appeal from an order sustaining preliminary objections in the nature of a demurrer and entering judgment for the defendant physician, the sole issue is whether the physician who, at the request of the insurance company which employed him, examined the electrocardiogram (EKG) of an applicant for insurance, owed a duty to the applicant to discover and disclose heart abnormalities recorded by the electrocardiogram. For reasons hereinafter stated, we agree with the trial court that in the absence of a physician-patient relationship or other basis for imposing upon the physician a duty to the applicant, there can be no recovery by the applicant for the physician's failure to discover or disclose such an abnormality to the applicant. Therefore, we affirm.

In reviewing the trial court's order sustaining preliminary objections in the nature of a demurrer, we accept as true all material facts alleged in the complaint, as well as inferences reasonably deducible therefrom. *Gentile v. West American Insurance Exchange*, 367 Pa.Super. 99, 104–105, 532 A.2d 472, 475 (1987). See also: *Kyle v. McNamara & Criste*, 506 Pa. 631, 487 A.2d 814 (1985); *Halliday v. Beltz*, 356 Pa.Super. 375, 514 A.2d 906 (1986). Moreover,

> [i]n determining whether the factual averments of a complaint are sufficient to state a cause of action, all doubts must be resolved in favor of the sufficiency of the complaint. *Slaybaugh v. Newman*, 330 Pa.Super. 216, 479 A.2d 517, 519 (1984). A demurrer will be sustained only where the complaint demonstrates with certainty that under the facts averred within, the law will not permit a recovery. *Id.;* see also *Cianfrani v. Commonwealth, State Employees' Retirement Board*, 505 Pa. 294, 479 A.2d 468, 469 (1984). If any theory of law will support the claim raised by the complaint, dismissal is improper. *Slaybaugh, supra; Cianfrani, supra.*

*Alumni Ass'n. v. Sullivan,* 369 Pa.Super. 596, 600–601, 535 A.2d 1095, 1098 (1987).

The complaint in the instant case was filed by Donna C. Ervin in her own right and on behalf of the estate of her deceased husband, Thomas J. Ervin. She alleged that Thomas Ervin had applied to American Guardian Life Assurance Company (American) for term life insurance and that in connection therewith he had submitted to a physical examination at the request of American. As a part of the physical examination, which had been conducted by physicians employed by American on February 6, 1985, an EKG was taken. This EKG was subsequently examined for American by the defendant, Dr. Norman S. Knee, who was American's medical director. On March 1, 1985, less than a month later, Thomas Ervin died of a heart attack. The complaint alleges that the EKG disclosed that Ervin had suffered a prior myocardial infarction and that other cardiac abnormalities existed which Dr. Knee had negligently failed to discover, or, in the alternative, had failed to report to Ervin.[1] If they had been disclosed, according to the complaint, Ervin's death could have been avoided.

In sustaining Dr. Knee's preliminary objections in the nature of a demurrer, the trial court reasoned as follows:

The Court finds as a matter of law that under the pleaded facts, Plaintiffs have failed to state an actionable claim. Plaintiffs assert that Dr. Knee owed the decedent a duty but fail[ed] to establish the existence of a physician-patient relationship or any other basis for imposing upon Dr. Knee such duty.

The Complaint indicates that Dr. Knee undertook to read Mr. Ervin's EKG pursuant to a contractual obligation to American as an employee; this obligation did not extend to Mr. Ervin.

The Complaint fails to set forth, however, that Dr. Knee ever saw Mr. Ervin as a patient, treated or rendered care to Mr. Ervin or otherwise undertook to act as dece-

1. American paid the full amount of the policy ($200,000.00) for which Ervin had applied.

dent's physician, and no inferences can anywhere be drawn from the Complaint that a physician-patient relationship ever existed between Defendant Dr. Knee and the deceased.

The trial court also relied upon this Court's decision in *Craddock v. Gross*, 350 Pa.Super. 575, 504 A.2d 1300 (1986), where we held that a physician who had examined a workmen's compensation claimant on behalf of a compensation insurance carrier did not owe to the claimant a duty which would support a medical malpractice action. Other jurisdictions have reached the same conclusion. See, e.g.: *Cook v. Optimum/Ideal Managers, Inc.*, 130 Ill.App.3d 180, 84 Ill.Dec. 933, 473 N.E.2d 334 (1984); *Keene v. Wiggins*, 69 Cal.App.3d 308, 138 Cal.Rptr. 3 (1977); *Johnston v. Sibley*, 558 S.W.2d 135 (Tex.Civ.App.1977); *Rogers v. Horvath*, 65 Mich.App. 644, 237 N.W.2d 595 (1975); *LoDico v. Caputi*, 129 A.D.2d 361, 517 N.Y.S.2d 640 (1987). The Michigan court in *Rogers v. Horvath, supra*, explained the reason for the rule as follows:

> The principal question raised by this appeal is whether a professional physician-patient relationship is a legal prerequisite to basing a cause of action in professional malpractice against a physician.
>
> . . . .
>
> The term "malpractice" denotes a breach of the duty owed by one in rendering professional services to a person who has contracted for such services; in physician-malpractice cases, the duty owed by the physician arises from the physician-patient relationship. No such relationship existed in the case at bar. Defendant was employed by General Motors to examine one of its employees in preparation for a workmen's compensation hearing. Plaintiff did not employ the defendant, nor did she seek or receive medical advice or treatment. Under such circumstances, the defendant did not owe plaintiff any duty arising from a physician-patient relationship. This is not to say that a physician who examines a person for reasons other than diagnosis or treatment and for the bene-

fit of some one other than the examinee owes no duty of due care to that person. Rather, we hold that the physician in such a case does not owe such a duty of care as will subject him to liability for malpractice.

*Id.* 65 Mich.App. at 646–647, 237 N.W.2d at 596–597 (footnotes omitted).

It has also been held that a doctor examining a job applicant on behalf of a prospective employer owes no duty to the applicant to diagnose disease. *Lotspeich v. Chance Vought Aircraft,* 369 S.W.2d 705 (Tex.Civ.App.1963). The plaintiff in *Lotspeich* alleged that the doctor had been negligent in failing to discover from X-rays taken as a part of a pre-employment physical that she had tuberculosis. In holding that the doctor owed no duty to the job applicant, the *Lotspeich* court stated that the job applicant had no legal right to demand that the doctor exercise any care whatsoever in conducting the examination "except to avoid injuring her." *Lotspeich v. Chance Vought Aircraft, supra* at 710. See also: *Wilcox v. Salt Lake City Corp.,* 26 Utah 2d 78, 484 P.2d 1200 (1971); *Riste v. General Electric Co.,* 47 Wash.2d 680, 289 P.2d 338 (1955); *New York Central R.Co. v. Wiler,* 124 Ohio St. 118, 177 N.E. 205 (1931). Cf. *Thomas v. Kenton,* 425 So.2d 396 (La.App.1982) (employee did not state a claim for relief where complaint alleged that plant physician failed to inform him of progressive deterioration of employee's lung condition since no physician-patient relationship existed between plant physician and employee).

Thus, "[t]he general rule is that a physician who is retained by a third party to conduct an examination of another person and report the results to the third party does not enter into a physician-patient relationship with the examinee and is not liable to the examinee for any losses he suffers as a result of the conclusions the physician reaches or reports." Proof of Facts: Existence of Physician and Patient Relationship, 46 P.O.F.2d 373, 384. See also: 61 Am.Jur.2d Physicians, Surgeons, and Other Healers §§ 296–298. This general rule was explained by the California Court in *Keene v. Wiggins, supra,* as follows:

It is well established by authorities in other states the physician is liable for malpractice or negligence only where there is a relationship of physician-patient as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill and there is a breach of professional duty to the patient (*Hoover v. Williamson*, 236 Md. 250, 203 A.2d 861, 10 A.L. R.3d 1064). Whether any such duty may result when the physician examines the person not as a part or for the purpose of medical treatment is discussed in 10 A.L.R.3d 1071. The authorities reported there uniformly hold that where no physician-patient relationship exists the doctor's only duty is to conduct the examination in a manner not to cause harm to the person being examined. The physician acts as an agent of the person requesting the examination (see *Layton v. New York Life Ins. Co.*, 55 Cal. App. 202, 202 P. 958) and absent special circumstances, his duty to observe good standards of professional skill in reporting the results of the examination runs only to the person employing him.

*Id.* 69 Cal.App.3d at 313, 138 Cal.Rptr. at 6–7 (footnotes omitted). See: Annotation: Physician's Duties and Liabilities to Persons Examined Pursuant to Physician's Contract With Such Person's Prospective or Actual Employer or Insurer, 10 A.L.R.3d 1071 (1966); *Hoover v. Williamson*, 236 Md. 250, 203 A.2d 861 (1964). See also: Annotation: What Constitutes Physician–Patient Relationship for Malpractice Purposes, 17 A.L.R.4th 132 (1982); *Ahnert v. Wildman*, 176 Ind.App. 630, 376 N.E.2d 1182 (1978).

In *Hoover v. Williamson, supra,* the plaintiff had been examined by a physician on behalf of the plaintiff's employer. The doctor undertook to advise the plaintiff and misrepresented to him the seriousness of his condition. The Maryland Court of Appeals found that the doctor's affirmative acts in advising the plaintiff had created a duty on the part of the physician to exercise due care in advising plaintiff because, under the peculiar facts of that case, the existence of a physician-patient relationship had been created. However, the court carefully limited its holding by

stating that normally a doctor incurs no liability absent a physician-patient relationship. Specifically, the court said:

> The appellee is right in his contention that ordinarily recovery for malpractice or negligence against a doctor is allowed only where there is a relationship of doctor and patient as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill and the patient will pay for such treatment, and there has been a breach of professional duty to the patient. Thus, it has been held that there is not a doctor-patient relationship between: (a) a prospective or actual insured and the physician who examines him for the insurance company; or (b) a prospective or actual employee and the doctor who examines him for the employer.
>
> . . . .
>
> It may be assumed that if Dr. Williamson had done no more than direct or supervise the X-ray examination of Hoover, his only duty would have been to General Electric. The allegations of the amended count against Dr. Williamson, however, go further. Dr. Williamson urges that these further allegations are not statements of fact but, rather, are no more than the conclusions of the pleader, Hoover. We think, however, that in the context of the whole of the amended count under consideration, the allegations were of facts that Dr. Williamson undertook to advise Hoover of his condition of health, referred him to a consultant (expert in the field) and, after this consultation, both affirmatively undertook to advise Hoover again and, contrary to his professional obligations, both wrongfully represented the seriousness of his condition (it may be inferred by permitting him to continue to work in the same injurious environment at General Electric) and concealed from him the recommendations to the contrary of the consultant, all to the injury of, and damage to, Hoover.
>
> The allegations amount to more than that the doctor kept silent after review of the X–ray revelations and the

findings of the consultant. The charge of affirmative misrepresentation was coupled with the charge of concealment of the consultant's recommendations and, under the circumstances, made the concealment as much a breach of duty as the affirmative misrepresentation. *Harper and James,* op. cit., Sec. 18.6; *Pashley v. Pacific Electric R.Co.,* 25 Cal.2d 226, 153 P.2d 325, 329.

*Hoover v. Williamson, supra* 236 Md. at 253, 255, 203 A.2d at 863–864 (footnote omitted). Cf. *Bouligny v. Metropolitan Life Insurance Co.,* 133 S.W.2d 1094 (Mo.App.1939) (no professional relationship exists between applicant for life insurance and medical examiner for insurance company, thus, medical examiner's report to insurance company is not privileged communication); *Metropolitan Life Insurance Co. v. Evans,* 183 Miss. 859, 184 So. 426 (1938) (same). But see: *Betesh v. United States,* 400 F.Supp. 238 (D.D.C.1974); *Beadling v. Sirotta,* 41 N.J. 555, 197 A.2d 857 (1964); *Ferguson v. Wolkin,* 131 Misc.2d 304, 499 N.Y.S.2d 356 (1986).

Our review of the foregoing authorities leads us to the conclusion that the defendant physician in the instant case owed no duty to the plaintiff's decedent either to discover his heart problem or, having discovered it, to inform the decedent thereof. The defendant had been employed by American to advise the company whether the applicant was an insurable risk. He was not employed to make a diagnosis for the applicant or to treat the applicant for any condition which was discovered. Neither was there any evidence that the defendant, by giving the applicant advice or otherwise, had assumed a physician-patient relationship. In the absence of a physician-patient relationship between defendant and the applicant, the defendant physician did not owe a duty to the applicant to discover and disclose that the applicant was suffering from heart abnormalities.

Appellant's reliance on Section 324A of the Restatement (Second) of Torts to create a duty on the defendant's part is misplaced. Section 324A provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as

necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

There are no averments in the instant complaint that the defendant physician acted for the benefit of anyone other than the insurance company which had employed him. The defendant's purpose in reading the insurance applicant's EKG had not been to treat or otherwise benefit the applicant but only to advise the insurance company whether it was being asked to insure one who was a poor risk. If the defendant physician breached any duty it was a duty owed to his employer, American Guardian Life Assurance Company. He owed no similar duty to the applicant.

The order of the trial court sustaining the defendant's preliminary objections in the nature of a demurrer and entering judgment for the defendant physician is affirmed.