**Fortino v. Stouffer**

*Catherine M. Mahady-Smith,* for plaintiffs.
*Christopher A. Stump,* for defendant D. Leslie Adams, M.D.

HESS, *J.*, January 16, 1993—On March 21, 1991, the plaintiffs filed a complaint against various health-care providers for medical malpractice. Kelly Brown Fortino

alleged that she was negligently treated for excessive and continual vaginal bleeding over the course of a three-year period. Specifically, she alleges a failure to timely diagnose her endometrial cancer which resulted in a complete hysterectomy and subsequent radiation therapy.

During the course of her treatment with the defendants, Mrs. Fortino requested that her primary treating physician, Dr. Jane Rowehl, refer her to her former gynecologist, Dr. D. Leslie Adams.[1] Instead of making the referral, Dr. Rowehl chose to contact Dr. Adams by telephone. On April 24, 1989, Dr. Rowehl and Dr. Adams discussed the nature of Mrs. Fortino's medical condition and a recommendation was made by Dr. Adams to try a birth control pill and, if that didn't stop the bleeding to perform a fractional dilation and curettage. This recommendation closely followed Dr. Rowehl's current treatment plan and was initially carried out. Following the phone conversation, no further contact was made with Dr. Adams and Mrs. Fortino was not billed for his services.[2]

On April 16, 1991, Dr. Adams filed preliminary objections to plaintiffs' complaint in the nature of a motion to strike the claim for punitive damages and, in the alternative, to dismiss all claims, by way of demurrer, for failure to establish a physician-patient relationship. By memorandum opinion and order dated July 26, 1991, we sustained the motion to strike but overruled the demurrer. We stated in regard to the demurrer that continued dis-

---

1. Dr. Adams had last treated Mrs. Fortino for an unrelated problem in June 1985.

2. The gravamen of plaintiffs' allegations against Dr. Adams is set forth in paragraphs 90-98 of their complaint.

covery may serve to explicate Dr. Adams' liability or lack thereof.

Following the taking of depositions, Dr. Adams moved for summary judgment. Briefs were submitted and argument was heard. Now the stage is set to once again examine the nature of Dr. Adams' relationship to Mrs. Fortino.

## DISCUSSION

In considering a motion for summary judgment, we must "examine the whole record, including the pleadings, any depositions, any answers to interrogatories, admissions of record, if any, and any affidavits filed by the parties." *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 176, 553 A.2d 900, 903 (1989). From this review, we must determine whether there exists a genuine issue of material fact. *Id.* "To determine the absence of a genuine issue of material fact, we must view the evidence in the light most favorable to the non-moving party and any doubts must be resolved against the entry of judgment." *Wright v. North American Life Assurance Co.,* 373 Pa. Super. 272, 275, 539 A.2d 434, 436 (1988). (citation omitted) In doing so, we accept as true all well-pled facts in the non-moving party's pleadings and give the non-moving party the benefit of all reasonable inferences to be drawn therefrom. *Id.* "Summary judgment is appropriate only in those cases which are clear and free from doubt." *Id.*

"In order to establish a prima facie case of malpractice, the plaintiff must establish: (1) a duty owed by the physician to the patient; (2) a breach of duty from the physician to the patient; (3) that the breach of duty was the proximate

cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) damages suffered by the patient that were a direct result of that harm. See, *Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983); Prosser, *Law of Torts,* Section 30 at 143 (4th ed. 1971)." *Mitzelfelt v. Kamarin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990).

To establish a duty owed by the physician to the patient in a malpractice case, the plaintiff must demonstrate a physician-patient relationship. *Craddock v. Gross,* 350 Pa. Super. 575, 579, 504 A.2d 1300, 1302 (1986), quoting *Rogers v. Horvath,* 65 Mich. App. 644, 646, 237 N.W.2d 595, 597 (1975). See also, *Ervin v. American Guardian Life Assurance Co.,* 376 Pa. Super. 132, 135, 545 A.2d 354, 356 (1988), *appeal denied,* 522 Pa. 604, 562 A.2d 826 (1989). Moreover, although there may be circumstances under which a consulting physician owes a duty to a patient with respect to the treatment by an attending physician, *Strohl v. Yorko,* 37 D.&C.3d 159, 162 (1984), there must be some facts to support a conclusion that a relationship has been created. *Oliver v. Brock,* 342 So.2d 1, 4 (Ala. 1977).

The plaintiffs believe the following facts support the conclusion that a physician-patient relationship was created between Dr. Adams and Mrs. Fortino: Dr. Adams was contacted at Mrs. Fortino's specific request because Mrs. Fortino had seen Dr. Adams in the past; Dr. Rowehl contacted Dr. Adams as a gynecology expert to find out what he wanted her to do insofar as Mrs. Fortino's treatment; Dr. Rowehl provided Dr. Adams with Mrs. Fortino's health history from December 1988, including her blood tests and consults; Dr. Adams recommended a trial of

a birth control pill and, if no response within two cycles, a D&C; Dr. Rowehl followed Dr. Adams' recommendation.

In addition, the plaintiffs highlight the following testimony by Dr. Rowehl to fill in the gaps: that Dr. Rowehl believed that Dr. Adams understood that his recommendations could alter Mrs. Fortino's course of treatment; that Dr. Rowehl didn't discuss the case in a hypothetical sense but rather discussed a single real patient; and that Dr. Adams would have asked her to send Mrs. Fortino over if he felt it was necessary.

Given these, and the facts which follow, judgment is appropriate as a matter of law because a jury could not conclude that Dr. Adams had a duty running to Mrs. Fortino as her physician. Therefore, the requisite elements of malpractice could not be proven. There is no dispute that Dr. Adams saw Mrs. Fortino in June 1985 for infrequent menstrual periods and that Mrs. Fortino didn't return to see him or speak to him after that. There is also no dispute that Dr. Adams has no recollection of the phone conversation with Dr. Rowehl in April 1989 nor has any other records on the subject. There is no dispute that Dr. Rowehl cannot recall if she identified Mrs. Fortino by name to Dr. Adams during their conversation. There is no dispute that Dr. Rowehl did not expressly tell Dr. Adams that she was relying on his advice. There is no dispute that Dr. Adams did not examine Mrs. Fortino following the April 1989 phone call nor review any of Mrs. Fortino's medical records. There is also no dispute that Dr. Adams was not given the full medical history of Mrs. Fortino but rather relied on Dr. Rowehl's recitation of the facts. Finally, there is no dispute that

Mrs. Fortino was not charged for Dr. Adams' services. In the final analysis, we are left with a single phone call to a colleague in which minimal information was conveyed before a recommendation was given which closely tracked the treating doctor's current plan. We have not come across a Pennsylvania case dealing with this precise set of facts. Nonetheless, the matter of the establishment of a physician-patient relationship has been dealt with by our appellate courts in other contexts.

In *Ervin v. American Guardian Life Assurance Co.,* *supra,* the Pennsylvania Superior Court affirmed the trial court's order sustaining preliminary objections in the nature of a demurrer because of the absence of a physician-patient relationship or any other basis for imposing upon the physician a duty. In *Ervin* the physician was employed by an insurance company to examine an electrocardiogram of an applicant for insurance. The complaint alleged that the physician had negligently failed to discover or, in the alternative, had failed to report heart abnormalities recorded by an electrocardiogram. The court found that the physician had not been "employed to make a diagnosis for the applicant or to treat the applicant for any condition which was discovered." *Id.* at 139, 545 A.2d at 358. The court also noted that there was no evidence "that the defendant, by giving the applicant advice or otherwise, had assumed a physician-patient relationship." *Id.* In light of the absence of a relationship, the court determined there was no duty owed the applicant. *Id.*

Similarly, in *Fabian v. Matzlo,* 236 Pa. Super. 267, 344 A.2d 569 (1975), the Pennsylvania Superior Court affirmed the lower court's grant of summary judgment

in favor of the physician because of a lack of duty. In *Fabian* the sole contact between the plaintiff and the physician was a telephone call by plaintiff's husband in which the physician informed the plaintiff's husband of the hospital's policies. This contact was not sufficient to impose liability under Restatement (Second) of Torts §323[3] because there was no undertaking by the physician, gratuitously or for consideration, to render services to another. *Id.* at 270-71, 344 A.2d at 571.

In the case sub judice there is no evidence that Dr. Adams assumed a physician-patient relationship by contract or otherwise. Nor is there any evidence that Dr. Adams undertook gratuitously to render services to Mrs. Fortino. Based on the evidence, Dr. Adams' services flowed solely to a colleague in the form of a recommendation. There is no evidence that Dr. Adams intended to treat Mrs. Fortino at any time. See generally, *Sacks v. Thomas Jefferson University Hospital,* 684 F.Supp. 858, 859-60 (E.D. Pa. 1988) (no evidence that the hospital

---

3. We insert the full text here as the plaintiffs have raised this section primarily in response to the fact that Dr. Adams' services were gratuitous. We do note, however, that there is no "undertaking" in this case.

"§323. *Negligent Performance of Undertaking to Render Services—*

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:

"(a) his failure to exercise such care increases the risk of such harm; or

"(b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts §323 (1965).

undertook to treat plaintiff as a patient or that the patient called upon the hospital to do so at any time prior to her fall), *aff'd,* 862 F.2d 310 (3d Cir. 1988). As noted in *Ervin, supra,* if Dr. Adams breached a duty, it was a duty to Dr. Rowehl, not to Mrs. Fortino.

Finally, we find support for our position from other jurisdictions. In *Hill by Burston v. Kokosky,* 463 N.W.2d 265 (Mich. App. 1990), the Michigan Court of Appeals, in affirming a grant of summary judgment, held that a doctor who was contacted by the patient's treating physician to discuss treatment alternatives does not owe a duty of care to the patient whose case was discussed such as would support a medical malpractice claim. In *Hill* the plaintiff's obstetrician contacted the defendant physicians to ask their opinions about his case. The defendants rendered their opinions over the telephone based on the case history related to them. The court noted:

"In this case, there is nothing in the record to suggest that a physician-patient relationship existed between plaintiffs and defendants. Neither defendant knew, examined, or spoke with plaintiffs. Burston was not referred to defendants for treatment or consultation. Plaintiffs did not employ defendants, nor did they seek medical advice or treatment from defendants. Defendants' medical opinions were addressed directly to Dr. Hole as a colleague and not indirectly to plaintiffs as patients. The opinions were not in the nature of prescribed course of treatment, but were recommendations to be accepted or rejected by Dr. Hole as he saw fit. In short, the telephone conversations between Dr. Hole and defendants did not give rise to a physician-patient relationship between plaintiffs

534

and defendants. Summary disposition was proper." *Id.* at 267.

Likewise, in *Oliver v. Brock,* 342 So.2d 1 (Ala. 1976), the Alabama Supreme Court, in affirming the trial court's grant of summary judgment, found that there was no physician-patient relationship from a consultation notwithstanding that during the defendant physician's conversation with the treating physician there was a general description of the minor plaintiff's injuries and current treatment and that the defendant concurred with such treatment. The court noted that there was no evidence to conclude that the defendant consented to treat the minor plaintiff or that he consented to act in a consulting capacity. The defendant was not asked to serve as a consultant, he never saw the minor plaintiff, he was not told her name and the conversation was completely gratuitous. See also, *Ingber v. Kandler,* 513 N.Y.S.2d 11 (A.D. 2d 1987) (summary judgment appropriate for informal opinion to fellow physician).

In addition, several other courts have refused to find a physician-patient relationship in similar contexts. In *Flynn v. Bausch,* 469 N.W.2d 125 (Neb. 1991), the Nebraska Supreme Court affirmed a summary judgment order for a physician who discussed an infant's condition with his treating physician crib-side. And in *Rainer v. Grossman,* 107 Cal. Rptr. 469 (Cal.App.3d 1973), the California Court of Appeal affirmed a summary judgment order for a guest lecturer who gave an opinion based on facts provided by the treating physician. In sum, we have not found a single case which would impose a duty upon Dr. Adams based on our facts.

## ORDER

And now, January 6, 1993, the motion of defendant D. Leslie Adams, M.D. for summary judgment is granted.