MICHAEL CLEGHORN, AND INDEPENDENT GUARD
ASSOCIATION OF NEVADA, LOCAL 1, APPELLANTS,
v. HARRIE F. HESS AND WACKENHUT SERVICES,
INC., RESPONDENTS.

No. 22426

June 9, 1993                                    853 P.2d 1260

[Rehearing denied November 2, 1993]

*Peter Alpert,* Las Vegas, for Appellants.

*Thorndal, Backus, Maupin & Armstrong* and *Earle W. White,*
Las Vegas, for Respondents.

## OPINION

By the Court, ROSE, C. J.:

### FACTS

Respondent Wackenhut Services, Inc. (Wackenhut) is under contract with the United States Department of Energy (DOE) to provide security services at the Nevada Test Site and related nuclear weapons facilities in Nevada. Appellant Michael Cleghorn (Cleghorn) is a security inspector for Wackenhut and has been a Wackenhut employee since May 24, 1982. Under a contract with Wackenhut, respondent Harrie Hess (Dr. Hess), a licensed psychologist, examines, tests, and evaluates Wackenhut employees and applicants for employment to determine their psychological suitability for employment. The psychological testing is conducted in accordance with the terms of a collective bargaining agreement between Wackenhut and appellant Independent Guard Association of Nevada, Local 1 (IGAN), and as part of a medical and psychological suitability testing program for the DOE Human Reliability Personnel Assurance Program (PAP). As a condition of employment for security personnel, the DOE requires Wackenhut to employ only those persons who meet PAP medical standards.

Wackenhut referred Cleghorn to Dr. Hess for psychological

testing on May 9, 1982, (pre-employment), and again on July 6, 1990. Cleghorn requested copies of his psychological records and test results pursuant to NRS 629.061.[1] Dr. Hess and Wackenhut refused Cleghorn's repeated requests for copies of his psychological test results. Thereafter, Cleghorn brought an action for declaratory and injunctive relief, seeking to obtain the test results of his psychological testing. Dr. Hess and Wackenhut attempted to remove the action to federal court. On November 29, 1990, the United States District Court for the District of Nevada remanded the case back to the state district court. On January 16, 1991, IGAN was allowed to intervene on behalf of its members who were Wackenhut employees who had undergone psychological testing by Hess. All parties filed motions for summary judgment in the district court. The district court granted Hess and Wackenhut's motion for summary judgment, and denied the other motions.

## LEGAL DISCUSSION

The sole issue on review is whether the district court erred in concluding that NRS 629.061 does not entitle Cleghorn and IGAN to obtain copies of their psychological test results. NRS 629.061 provides, in pertinent part: "1. Each provider of health care shall make the health care records of a patient available for physical inspection by: (a) the patient or a representative with written authorization from the patient . . . ." Cleghorn and IGAN argue that NRS 629.061 entitles them to receive copies of the test results of the psychological testing done by Hess for the following reasons: (1) Hess is a provider of health care as defined in NRS 629.031;[2] (2) Cleghorn and the IGAN members are patients because they are persons seeking medical services for examina-

---

[1]NRS 629.061 provides, in pertinent part:

    1.  Each provider of health care shall make the health care records of a patient available for physical inspection by:

    (a) The patient or a representative with written authorization from the patient;

    (b) An investigator for the attorney general or a grand jury investigating an alleged violation of NRS 422.540 to 422.570, inclusive; or

    (c) Any authorized representative or investigator of a state licensing board during the course of any investigation authorized by law.

[2]NRS 629.031 provides:

    "Provider of health care" means a physician licensed under chapter 630, 630A or 633 of NRS, dentist, licensed nurse, dispensing optician, optometrist, registered physical therapist, podiatrist, licensed psychologist, licensed marriage and family therapist, chiropractor, doctor of Oriental medicine in any form, medical laboratory director or technician, pharmacist or a licensed hospital as the employer of any such person.

tion or treatment; and (3) the records requested are medical records as defined in NRS 629.021.[3]

Dr. Hess and Wackenhut assert that Hess is not a provider of health care under the statute. They further assert that Cleghorn and the IGAN members were not patients of Hess pursuant to NRS 629.061 because Hess did not provide health care to them, they did not expect any treatment from Hess, and the examinations were for the sole benefit of Wackenhut. Dr. Hess and Wackenhut contend that the examinations are similar to an independent medical examination performed prior to litigation during discovery because in either case no physician-patient relationship is contemplated or takes place.

As a licensed psychologist, Dr. Hess is clearly a "provider of health care" under NRS 629.031. The information sought by Cleghorn and IGAN are written reports and records produced by Dr. Hess containing information relating to Dr. Hess' examination of Wackenhut employees, including Cleghorn, and thus are "heath care records" as defined in NRS 629.021. Although there is no definition of patient provided in Chapter 629, a "patient" is defined in our evidence statutes as "a person who consults or is examined or interviewed by a doctor for purposes of diagnosis or treatment." NRS 49.215(3). The word patient has similarly been defined as "a person seeking medical services for examination or treatment." See 46 Am. Jur. *Proof of Facts 2d* 395 (1986). The Wackenhut employees were undeniably interviewed and examined by Hess in order to determine their psychological suitability for employment. Dr. Hess and Wackenhut assert that Dr. Hess examined and evaluated Cleghorn and the IGAN members, but did not provide medical treatment to them. The distinction, if indeed one exists, between a psychological evaluation and psychological treatment, is hardly the determinative linchpin Dr. Hess and Wackenhut would have it be.

The cases relied on by Dr. Hess and Wackenhut generally deal with the tort liability. Dr. Hess and Wackenhut argue that the examined employees are not "patients" because they do not receive nor do they reasonably expect medical treatment in connection with their employer-required examination. This determi-

---

[3]NRS 629.021 provides as follows:

"Health care records" means any written reports, notes, orders, photographs, X-rays or other written record received or produced by a provider of heath care, or any person employed by him, which contains information relating to the medical history, examination, diagnosis or treatment of the patient.

nation is crucial to a medical malpractice case, where the duty of care, and hence liability, is defined by whether a doctor-patient relationship exists. *See* Felton v. Schaeffer, 279 Cal.Rptr. 713 (Cal.Ct.App. 1991); Keene v. Wiggins, 138 Cal.Rptr. 3 (Cal. Ct.App. 1977). However, it is not germane to the issue of whether an employee should have access to psychological information that has been collected about them by their employer.

Furthermore, to say in the instant case that the employees were not patients because they did not receive treatment is to split hairs. The employees were tested, examined, and evaluated by a psychologist. The definition of "patient" utilized by other jurisdictions when considering tort liability is not necessarily appropriate in the instant case, and a more liberal definition of "patient" would be in harmony with the legislative intent behind the enactment of NRS 629.061. The intent of the legislature is the controlling factor in statutory interpretation. State, Dep't of Mtr. Vehicles v. McGuire, 108 Nev. 182, 184, 827 P.2d 821, 822 (1992). When the language of a statute is clear on its face, its intention must be deduced from such language. *Id.* The statute is clearly intended to provide, rather than prevent, access to medical records by specific persons, while at the same time protecting the patient's privacy rights: only the patient or patient's representative, the attorney general or grand jury, or an authorized representative or investigator of the state licensing board may access the medical records. *See* NRS 629.061. The Nevada Legislature set forth detailed requirements and procedures for the retention, copying, and inspection of a patient's medical records to facilitate the obtaining of that information. *See* NRS 629.011-629.081. A narrow interpretation of who is a patient would defeat the purpose of the statute. We therefore conclude that Cleghorn and the IGAN members are patients for the purposes of NRS 629.061.

Dr. Hess and Wackenhut further assert that the psychological examinations were conducted for the sole benefit of Wackenhut, and thus, no physician-patient relationship arose between Dr. Hess and the examinees. When an employee is required, as a condition of employment, to submit to a medical examination, that examination creates a relationship between the examining physician and the examinee, at least to the extent of the tests conducted. Green v. Walker, 910 F.2d 291, 296 (5th Cir. 1990) (interpreting Louisiana law); *see also* Daly v. U.S., 946 F.2d 1467 (9th Cir. 1991) (interpreting Washington law); Betesh v. United States, 400 F.Supp. 238 (D.D.C. 1974) (interpreting

Maryland law). *But see* Beamon v. Helton, 573 So.2d 776 (Miss. 1990). The duty of care imposed on the doctor performing those tests runs to the employee being examined as well as the employer. *Green,* 910 F.2d at 296. Whether the employee is called a "patient" or an "examinee" is irrelevant. The key factor here is that the Wackenhut employees are the ones who were tested, examined, and evaluated and should correspondingly have access to the results of that testing. Interestingly, the comprehensive collective bargaining agreement between Wackenhut and IGAN, the terms of which provide for the psychological testing of the employees, does not prohibit disclosure of the test results to the employees. One would therefore assume that the employees have a right to this information.

Wackenhut employees are examined, tested, and evaluated by Dr. Hess, a licensed psychologist, to determine if they are "psychologically suitable" for employment. Yet, after being subjected to this examination, the employees themselves are then denied access to the results of that testing. Adverse information in the employees' personnel files could, unbeknownst to the employees, materially affect their future, without the employees having had an opportunity to challenge the purported results. *See, e.g.,* Quinones v. United States, 492, F.2d 1269 (3rd Cir. 1974). Denying employees access to their own files allows employers to gather secret information on their employees with impunity. To prevent this type of injustice, many states have enacted legislation requiring private employers to permit employees to examine their own personnel files.[4]

Dr. Hess and Wackenhut vehemently assert that the release of the employees' test results will pose an imminent danger to the entire Nuclear Explosives Safety Program of the DOE but do not provide any convincing statistics or authority for this assertion. Discussing the legislative intent behind NRS 629.061, Dr. Hess and Wackenhut revealingly state that there are no consumer protection concerns here, as Wackenhut is carrying out an important mission on behalf of the government. It is as if to say we can trust "Big Brother" to look after our best interest. We have found from experience that government functions best when subject to reasonable scrutiny. Information should be withheld from citizens who are affected by it only when truly merited, such as when a national security reason is established. Showing an employee

---

[4]*See, e.g.,* Cal.Lab. Code § 1198.5 (West 1991); Me. Rev. Stat. Ann. tit. 26, § 631 (West 1992); Mich. Comp. Laws Ann. § 423.501 (West 1978 & Supp. 1992); Or. Rev. Stat. § 652.750 (1991); Pa. Stat. Ann. tit. 43, § 1321 (1991); *see also* D. Jan Duffy, *Privacy v. Disclosure: Balancing Employee and Employer Rights,* 7 Emp. Rel. L.J. 594 (1982).

his or her psychological test result surely will not compromise national security.

We conclude that employees who undergo psychological testing as a condition of employment are "patients" for the purposes of NRS 629.061 and that the district court erred in concluding that the statute does not entitle Cleghorn and IGAN to obtain copies of the psychological test results. We have carefully considered all other contentions on appeal and we conclude that they either lack merit or need not be further addressed in light of our disposition. Accordingly, we reverse the decision of the district court and remand this case to the district court with instructions to enter judgment in favor of Cleghorn and the IGAN members, as they are entitled to copies of their psychological test results under NRS 629.061.

SPRINGER and SHEARING, JJ., concur.

STEFFEN, J., with whom YOUNG, J., joins, dissenting:

I respectfully dissent.

The key to this case on appeal is the meaning of the term "patient." Although Dr. Hess, a licensed psychologist, is clearly a "provider of health care" under NRS 629.031, it is equally clear that Cleghorn's relationship with Dr. Hess was not that of a "patient." .

Appellants place the issue in proper perspective, but fail to recognize it, in citing the definition of "patient" found in *Webster's Third New International Dictionary of the English Language—Unabridged* (1968) as "a client for medical services (as of a physician or dentist)." Cleghorn was neither a "client" nor a seeker of "medical services" in his relationship with Dr. Hess. To the contrary, Wackenhut was Dr. Hess' client, and the examination of Cleghorn by Dr. Hess constituted a service required by and performed for Wackenhut. The purpose of the examination was to determine the suitability of Cleghorn to continue his employment as a security inspector for Wackenhut. To the extent that the examination involved "medical services," it was purely incidental to the purpose of employment qualification.

Appellants' reference to the definition of a "patient" as "a person seeking medical services for examination or treatment" is also insupportive of their position. *See* 46 Am. Jur. *Proof of Facts 2d,* 395 (1986). Cleghorn did not report to Dr. Hess seeking medical services for either examination or treatment. He was directed to report to Dr. Hess for psychological testing requisite for continued employment with Wackenhut. In no sense did Cleghorn seek any type of medical services from Dr. Hess in the

sense that a patient seeks out the services of a physician for diagnostic examination, care, or treatment.

The case of Green v. Walker, 910 F.2d 291 (5th Cir. 1990), cited by appellants is also unavailing as support for their position. *Green* stands only for the proposition that if an employer requires an employee to be examined physically or mentally as a condition to obtaining or maintaining employment, the examining health care provider would have an obligation to perform the exam with due care and to provide the examinee with any findings that would signal imminent danger to the physical or mental well-being of the examinee. The *Green* holding is a far cry from a determination that the examined employee is a "patient" of the examining health care provider. Rather, the ruling constitutes a sound affirmation of the concept of duty under a tort law analysis. At no point did the *Green* court declare the examinee a "patient" entitled to the report of the examination except to the extent previously stated.

More cogently to the point at issue is the case of Ervin v. Am. Guardian Life Assur., 545 A.2d 354 (Pa.Super.Ct. 1987), *appeal denied,* 562 A.2d 826 (Pa. 1989), where the court ruled that no physician-patient relationship results where a physician is employed to examine but not diagnose or treat an applicant for a life insurance policy. *See also,* Hoesl v. United States, 451 F.Supp. 1170, 1176 (N.D.Cal. 1978), *aff'd,* 629 F.2d 586 (9th Cir. 1980) ("[a]n examining physician is a doctor who does not undertake either by himself or in connection with others to advise or treat the people whom he examines"); Keene v. Wiggins, 138 Cal.Rptr. 3 (Cal.Ct.App. 1977) (in medical malpractice cases, no doctor-patient relationship exists between an employee and the doctor who examines the employee for the benefit of the employer).

The instant case is analogous to *Ervin* in that Cleghorn was examined at the direction of his employer, Wackenhut, in order to maintain his employment. In *Ervin,* the examination was required by the insurance company in order to qualify Ervin for coverage. Both cases involve an examination performed by health care providers at the request of parties *other than the examinee* for commercial purposes only incidently related to the health of the person examined. In neither case was the examinee, in any sense, a "patient" of the examiner. In neither case was the examiner's fee paid by or on behalf of the examinee. In neither case was the examination performed in furtherance of a primary interest in the mental or physical health of the examinee.

The majority also turns to the definition of "patient" in Nevada's evidence code as a measure of support for the conclusion that Cleghorn enjoyed that status with Dr. Hess. I suggest

that a contrary conclusion is warranted. NRS 49.215(3) defines "patient" for purposes of the doctor-patient privilege as "a person who consults or is examined or interviewed by a doctor for purposes of diagnosis or treatment." Cleghorn did not report to Dr. Hess for either diagnosis or treatment. The sole purpose of the examination conducted by Dr. Hess was to determine Cleghorn's suitability for employment based upon his test results. If the test results revealed a condition of unsuitability, Dr. Hess was not called upon to diagnose or treat the underlying causes of the condition. Finally, the privilege itself excludes Cleghorn from the definition of a "patient" in providing that "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications among himself, his doctor or persons who are participating in the diagnosis or treatment under the direction of the doctor, including members of the patient's family." NRS 49.225. Clearly, Cleghorn had no right to prevent the disclosure of the test results to Wackenhut who had instructed Dr. Hess to perform the examination in the first place.

Moreover, I disagree with the majority's conclusion that the results of Cleghorn's examination by Dr. Hess constitute "health care records" as defined in NRS 629.021.[1] The majority's position is undermined by the mere fact that the results of an employment suitability test does not reflect any aspect of "care." A health *care* record contains information generated by a health care provider regarding the medical history, examinations, diagnoses, and treatment of his or her "patient." Indeed, the entirety of Chapter 629 of the Nevada Revised Statutes is constituted under the title of "Healing Arts Generally." Nothing pertaining to Cleghorn's examination by Dr. Hess related to healing. Dr. Hess sought only to determine Cleghorn's mental status or suitability for employment as required by Wackenhut.

Finally, the majority voices the concern that employers may gather "secret" information about their employees and use it against them with impunity. I suggest that if, in situations other than at will employment where termination may occur for any reason or no reason, an employee has reason to believe that test results are concocted or concealed in order to create a pretense for termination, contract or tort law will provide an effective avenue of relief for the aggrieved employee. I therefore question the propriety of this court placing an expansive gloss on what

---

[1]NRS 629.021 provides as follows: "'Health care records' means any written reports, notes, orders, photographs, X-rays or other written record received or produced by a provider of health care, or any person employed by him, which contains information relating to the medical history, examination, diagnosis or treatment of the patient."

appears to be a clear statute in order to meet a contingency that may or may not occur and which could be resolved according to the law of torts or contracts in any event. If the Legislature determines that employers who conduct pre-employment or employment retention testing should be required to give the results to the examinees, a statute may be enacted that would effectuate such a policy.

For the reasons expressed above, I respectfully dissent.